UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
ROY DEN HOLLANDER, WILLIAM A.         :
NOSAL,
                                                            :
               Plaintiffs,              :

       -against-                        :

INSTITUTE FOR RESEARCH ON               :
WOMEN & GENDER AT COLUMBIA
UNIVERSITY, SCHOOL OF                   :
CONTINUING EDUCATION AT                           **REPORT and RECOMMENDATION**
COLUMBIA UNIVERSITY, TRUSTEES           :
OF COLUMBIA UNIVERSITY IN THE                     08 Civ. 7286 (LAK)(KNF)
CITY OF NEW YORK, U.S. DEPARTMENT       :
OF EDUCATION, MARGARET
SPELLINGS, CHANCELLOR ROBERT M.         :
BENNETT, COMMISSIONER RICHARD P.
MILLS, RICHARD P. MILLS, PRESIDENT      :
JAMES C. ROSS, JAMES C. ROSS,
ROBERT M. BENNETT, BOARD OF             :
REGENTS OF THE UNIVERSITY OF NEW
YORK,                                   :
               Defendants.
------------------------------------------------------------x
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

TO THE HONORABLE LEWIS A. KAPLAN, UNITED STATES DISTRICT JUDGE

## I.  INTRODUCTION

In August 2008, Roy Den Hollander ("Den Hollander") and William A. Nosal ("Nosal") (collectively, "the plaintiffs"), proceeding pro se, commenced this action, pursuant to 42 U.S.C. § 1983 ("§ 1983"), against the Institute for Research on Women and Gender at Columbia University ("IRWG"); the School of Continuing Education at Columbia University ("SCE"); the Trustees of Columbia University in the City of New York ("Trustees"); the United States Department of Education ("USDOE"); Margaret Spellings ("Spellings"), the United States

Secretary of Education, in her official capacity; the Board of Regents of the University of the State of New York ("BOR"); Robert M. Bennett ("Bennett"), the Chancellor of the Board of Regents, in his individual and official capacities; Richard P. Mills ("Mills"), the Commissioner of the New York State Department of Education, in his individual and official capacities; and James C. Ross ("Ross"), the President of the New York State Higher Education Services Corporation, in his individual and official capacities.  The plaintiffs allege that: (1) USDOE and Spellings ("the Federal defendants"), and BOR, Bennett, Mills and Ross ("the State defendants"), violated the First Amendment's Establishment Clause, by "aiding the establishment of the religion of Feminism at Columbia University through the University's Women's Studies program"; (2) USDOE and Spellings violated the Fifth Amendment's Equal Protection Clause, by "aiding the intentional discriminatory impact against men by Columbia University's Women's Studies program"; (3) the State defendants violated the Fourteenth Amendment's Equal Protection Clause and Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 et seq. ("Title IX"), by "fostering, supporting and assisting the intentional discriminatory impact against men by Columbia University's Women's Studies program"; and (4) "Columbia University," IRWG and SCE violated the Fourteenth Amendment's Equal Protection Clause, Title IX and New York Civil Rights Law § 40-c, by "carry[ing] out the intentional discriminatory impact against men of the Women's Studies program."

Before the Court are the defendants' motions to dismiss the plaintiffs' amended complaint, made pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).  In their motion, IRWG, SCE and Trustees contend they are entitled to the relief they seek because: (1) the plaintiffs lack standing to sue; (2) Columbia University ("Columbia") is not a "state actor," within the meaning

2

of 42 U.S.C. § 1983; and (3) the plaintiffs do not state an actionable claim of discrimination. For their part, the State defendants assert they are entitled to the relief they seek because: (1) "feminism" is not a religion, as contemplated by the First Amendment; (2) the "laws and regulations governing registration and funding of degree programs are . . . gender-neutral," and are not administered in an unequal way; and (3) Title IX does not require Columbia to offer "men's studies programs." The Federal defendants contend they are entitled to the relief they seek because: (1) the financial assistance provided to Columbia, by the federal government, does not violate the Establishment Clause, and IRWG's courses are not "religious," as contemplated by the Establishment Clause; and (2) the plaintiffs lack standing to assert a due process claim, against the Federal defendants.

In opposition to the motions, the plaintiffs reiterate the assertions made in the amended complaint. In addition, the plaintiffs contend they possess standing, since they "allege injury to themselves (such injury may be indirect), [and] the injuries are ongoing and traceable to the defendants' conduct."

The defendants' motions are analyzed below.

## II. BACKGROUND

In the amended complaint, the plaintiffs style the litigation a "class action," for which the putative class consists of:

> all males who were students, full or part time, at some point in time during the three years prior to the filing of this action [in August 2008] or all males who currently maintain the status of student or alumni, or all males who will in the future acquire the status of student or alumni and would have taken advantage of a Men's Studies program had one existed by enrolling in the program, taking courses in the program, participating in the program's networking, receiving support from the program, pursuing career and academic opportunities provide[d] by the program, gaining a

3

male perspective on modern day issues, or furthering their knowledge and understanding of mankind and society.

According to the complaint, in 2007, Den Hollander wished to "offset the advantage of counterfeit scholarship provided by Women's Studies programs, [by] formulat[ing] a definite plan to attend Columbia as an alumnus to educate himself with scholarly research in Men's Studies for use in [] lawsuits and general enlightenment. . . ." Den Hollander discovered Columbia had neither Men's Studies course offerings nor programs of study; however, Den Hollander alleges he "intends to enroll in a Men's Studies program the moment one is offered." Nosal graduated from Columbia College in 2008, intended to enroll in Men's Studies while he was a student, but was prevented from doing so because no such program existed at Columbia. Nosal "continues to intend to participate in a Men's Studies program if one is provided."

The amended complaint states that the Women's Studies program at Columbia, inter alia: (1) "instructs, trains, supports, furthers, cultivates and advocates strategies, and tactics for demeaning and abridging the rights of men"; (2) advocates "that the civil rights of males be diminished or eliminated"; and (3) "stereotype[s] males as the primary cause for most, if not all, the world's ills throughout history," while crediting females "with inherent goodness." No allegations are made in the amended complaint that Nosal or Den Hollander enrolled, or attempted to enroll, in any Women's Studies courses offered at Columbia; however, that pleading asserts the following:

> [t]he few Columbia University male students or alumni who do participate in the Women's Studies program are denigrate[d], silenced, ignored, chastised for being "machismo," treated as second class citizens, treated as the disposable sex, graded more harshly, prevented from expressing their points of view if contrary to Feminist tenets, frozen out of the advantages the program provides to females, and [are] all around treated negatively and differently than females in the program, as though they

4

were capitalists attending Moscow State University in the former Soviet Union.

As a result of the defendants' promotion of Columbia's Women's Studies program, the plaintiffs maintain that "members of the plaintiff class [are denied] the opportunity to take Men's Studies courses that will prepare and assist them for dealing with, defending against, and fighting the anti-male climate that is pervasive in America today." In addition, the plaintiffs allege that, "[b]ecause of the defendants' policies and practices[,] in advocating and furthering Feminism and training Feminist 'storm-troopers' through the Women's Studies program at Columbia University, the plaintiffs face obstacles to educational access and career opportunities solely as the result of an accident of nature that made them men."

The plaintiffs contend a Men's Studies program would, inter alia: (1) "use[] facts rather than propaganda to describe the truth about the differences and similarities of the sexes"; (2) train[] males to recognize and handle the power females often use to manipulate them, such as the male-paralyzing power of beauty, sexual power, verbal skills, victim power, and the male biological instinct to protect females at the price of harm to himself"; (3) offer[] both a factual perspective and solutions for the problems unique to fathers," including the "transformation of their marriages into alimony payments," the "alienation of their children by ex-wives" and the "connivance of domestic relations courts with Feminist groups to violate their rights"; (4) "counter[] the historic belief in America . . . that females have a cart blanche to do whatever they want regardless of ethics or law"; (5) "expose[] the self-serving, schizoid paradigm of Feminist doctrine that females are strong and independent when they want something, but victims when they violate the law"; and (6) "counter[] the training in Women's Studies that sends forth Feminists to pervert American ideals, ignore the rule of law, selectively enforce the Constitution,

5

and destroy men with impunity."

The plaintiffs request declaratory and injunctive relief, as well as nominal damages. Specifically, the plaintiffs request that the defendants be enjoined from providing further support to "Women's Studies programs such as the one at Columbia University," that the court declare the defendants have violated the plaintiffs' rights, as alleged in the amended complaint, and "level the playing field by either instituting a Men's Studies program or eliminating the Women's Studies program at Columbia University. . . ."

### III. DISCUSSION

"A court presented with a motion to dismiss under both Rule 12(b)(1) and 12(b)(6) must decide the jurisdictional question first because a disposition of a Rule 12(b)(6) motion is a decision on the merits, and therefore, an exercise of jurisdiction." Adamu v. Pfizer, Inc., 399 F. Supp. 2d 495, 500 (S.D.N.Y. 2005) (internal quotations and citations omitted).

An action may be dismissed pursuant to Fed. R. Civ. P. 12(b)(1), for lack of subject matter jurisdiction, "when [a] district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). In determining a motion made pursuant to Fed. R. Civ. P. 12(b)(1), a "court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of [the] plaintiff." Raila v. United States, 355 F.3d 118, 119 (2d Cir. 2004). The plaintiff bears the burden of showing, by a preponderance of the evidence, that subject matter jurisdiction exists. See Makarova, 201 F.3d at 113. Where, as here, a plaintiff(s) is proceeding pro se, the Court must construe the complaint liberally and "interpret [it] to raise the strongest arguments it suggests." Abbas v. Dixon, 480 F.3d 636, 639 (2d Cir. 2007).

6

*Standing*

Article III of the United States Constitution "restricts federal courts to deciding 'Cases' and 'Controversies' and thus imposes what the Supreme Court has described as the 'irreducible constitutional minimum of standing,' –injury-in-fact, causation, and redressability." Baur v. Veneman, 352 F.3d 625, 631-32 (2d Cir. 2003) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 2136 [1992]). "[An] injury-in-fact, [] is a concrete and particularized harm to a legally protected interest." W.R. Huff Asset Mgmt. Co., LLC v. DeLoitte & Touche, LLP, 549 F.3d 100, 106-07 (2d Cir. 2008) (internal citations, emphasis, and quotations omitted). "[C]ausation [is established by showing] a fairly traceable connection between the asserted injury-in-fact and the alleged actions of the defendant." Id. "[R]edressability [is] a non-speculative likelihood that the injury can be remedied by the requested relief." Id. In a circumstance such as this, where some, but not all, defendants in an action move to dismiss a complaint for lack of standing, "the Court must consider whether [the] plaintiff has standing sua sponte" as to all defendants. Ocean View Capital, Inc. v. Sumitomo Corp. of Am., No. 98 Civ. 4067, 1999 WL 1201701, at *8, 1999 U.S. Dist. LEXIS 19194, at *23 (S.D.N.Y. Dec. 15, 1999); see also Evac, LLC v. Pataki, 89 F. Supp. 2d 250, 261 n.4 (N.D.N.Y. 2000) ("Standing is an element of subject matter jurisdiction that the Court is required to raise sua sponte. . . . [and, therefore,] [b]ecause [the plaintiff] lacks standing . . . , the Court must dismiss [the plaintiff's] claims against all Defendants rather than only the moving Defendants . . . .").

*I. Injury in Fact*

An "injury in fact" involves "an invasion of a legally protected interest that is (a) concrete

and particularized and (b) actual or imminent, rather than conjectural or hypothetical." Gully v Nat'l Credit Union Admin. Bd., 341 F.3d 155, 160 (2d Cir. 2003). To establish an "injury in fact," a plaintiff must show that he has "suffered 'a distinct and palpable injury to himself,'" and such an injury must normally be one "peculiar to [the plaintiff] or to a distinct group of which he is a part, rather than one 'shared in substantially equal measure by all or a large class of citizens.'" Gladstone, Realtors v. Village of Bellwood, 441 U.S. 91, 100, 99 S. Ct. 1601, 1608 (1979) (quoting Warth v. Seldin, 422 U.S. 490, 499, 501, 95 S. Ct. 2197, 2205-06 [1975]). The plaintiff must establish that he "has sustained or is immediately in danger of sustaining some direct injury . . . [that] must be both real and immediate." City of Los Angeles v. Lyons, 461 U.S. 95, 101-02, 103 S. Ct. 1660, 1665 (1983) (internal quotations and citations omitted). "Allegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm. . . ." Laird v. Tatum, 408 U.S. 1, 13-14, 92 S. Ct. 2318, 2325-26 (1972).

The amended complaint alleges the plaintiffs have been harmed by: (1) the existence of the Women's Studies program at Columbia, as it discriminates against male students and causes harm to males by propagating negative information regarding males; and (2) the absence of a Men's Studies program at Columbia that would focus on issues relevant to males and "counter" the information taught through Columbia's Women's Studies program.

The plaintiffs' alleged injury, which is purportedly based upon the content of, or the discriminatory impact flowing from, the Women's Studies program at Columbia, is not an "injury in fact," since the plaintiffs do not allege they enrolled in a Women's Studies course(s) at Columbia that caused them to suffer a direct injury occasioned by firsthand exposure to the

8

content of the Women's Studies course(s), or that they were discriminated against, by being denied the opportunity to participate in Columbia's Women's Studies program. See, e.g., Moose Lodge No. 107 v. Irvis, 407 U.S. 163, 167, 92 S. Ct. 1965, 1968 (1972)(finding that the plaintiff lacked standing to challenge the Moose Lodge's racially discriminatory membership policy, because he never applied for membership). At most, the "injury" suffered by the plaintiffs, attributed by them to the existence of Columbia's Women's Studies program, is no more than a "subjective 'chill,'" and not an "objective harm." Such an "injury" is not an "injury in fact." Laird, 408 U.S. at 13-14, 92 S. Ct. at 2325-26. Consequently, exercising judicial authority over this case would "convert the judicial process into no more than a vehicle for the vindication of the value interests of concerned bystanders," and would ignore "a due regard for the autonomy of those persons likely to be most directly affected by a judicial order." Valley Forge Christian College v. Americans United for Separation of Church and State, 454 U.S. 464, 473, 102 S. Ct. 752, 759 (1982) (internal quotations and citations omitted).

To the extent the plaintiffs allege injury based upon the absence of a Men's Studies program at Columbia, their injury is not "concrete and particularized"; rather, it is "conjectural or hypothetical." See Gully, 341 F.3d at 160.

Although the plaintiffs style this litigation a "class action," this designation "adds nothing to the standing inquiry, since the named plaintiffs 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'" Doe v. Blum, 729 F.2d 186, 190 n.4 (2d Cir. 1984)(quoting Warth, 422 U.S. at 502, 95. S. Ct. at 2207).

## IV. RECOMMENDATION

For the reasons set forth above, the defendants' motions to dismiss the amended complaint, Docket Entry Nos. 21, 23, and 25, should be granted.

## V. FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of Court, with courtesy copies delivered to the chambers of the Honorable Lewis A. Kaplan, 500 Pearl Street, Room 1310, New York, New York, 10007, and to the chambers of the undersigned, 40 Foley Square, Room 540, New York, New York, 10007. Any requests for an extension of time for filing objections must be directed to Judge Kaplan. FAILURE TO FILE OBJECTIONS WITHIN TEN (10) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. See Thomas v. Arn, 474 U.S. 140 (1985); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir. 1992); Wesolek v. Canadair Ltd., 838 F.2d 55, 57-59 (2d Cir. 1988); McCarthy v. Manson, 714 F.2d 234, 237-38 (2d Cir. 1983).

Dated: New York, New York  Respectfully submitted:
April 15, 2009

_____
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE