UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------------------x

Roy Den Hollander,                                            Docket No.
                                                             10 CV 9277
           Plaintiff on behalf of himself and all others     (LTS)(HBP)
           similarly situated,

                    -against-

Members of the Board of Regents of the University of the State of
           New York, in their official and individual capacities;
Chancellor of the Board of Regents, Merryl H. Tisch, in her official
           and individual capacity;
New York State Commissioner of the Department of Education,
           David M. Steiner, in his official and individual capacity;
Acting President of the New York State Higher Education Services
           Corp., Elsa Magee, in her official and individual capacity;
U.S. Department of Education; and
U.S. Secretary of Education, Arne Duncan, in his official capacity;

           Defendants.
--------------------------------------------------------------------------------x

**Transcription of oral argument before the U.S. Court of Appeals for the Second
Circuit in *Den Hollander v. Inst. for Research on Women & Gender at Columbia
University*, 372 Fed. App'x. 140 (2d Cir. 2010), which occurred on April 8, 2010
before Judges CALABRESI and STRAUB.**

Judge Calabresi:
           Good morning.  We will hear *Hollander vs Institute of Research et al.*  Judge
Katzman is recused in this case.  Under the rules we are permitted to hear it.

Den Hollander:
           Good morning your honors my name is Roy Den Hollander.  I am the class
representative and the attorney for the punitive plaintive class.  Behind me is Chairman of
Foundation for Male Studies.  If this case continues, he will be joining as another class
representative.
           This case, I think the key issue here, is that it opposed the use of tax dollars for
supporting the new age religion of post-modern feminism, or some may call it ideological
feminism.
           The district court characterized the central claim in this case, or the "court claim"
of this case, as the violation of the Establishment Clause.  Since I, the class
representative, did not have standing, that was the finding of the court, I did not have
standing to oppose the use of taxpayer funds to support post-modern feminism.

Judge Calabresi:

      Did you in the trial court make a statement of a taxpayer standing for an Establishment case?

Den Hollander:

      No I did not, your honor.

      The lower court made, I wouldn't call it a fact finding, I would call it more of a decree, that feminism is as much as a religion as physics and that the allegation of feminism as a religion was "absurd and utterly without merit."

Judge Calabresi:

      That wasn't my question.  My question was did you in your complaint allege taxpayer standing to challenge an establishment of religion under *Flast*?  Did you make that claim of standing?

Den Hollander:

      In my complaint was an Establishment Clause claim, and I stated that I was a resident in Manhattan.  I think when you read complaints for standing purposes, you are supposed to draw, or should draw, inferences in favor the complaint.  I think the fact that I had an Establishment Clause claim in the complaint, that it was clear I was alleging feminism as a religion, that I am a resident of Manhattan, I think the inference is a reasonable one that I am a taxpayer and when the court then…

Judge Calabresi:

      How do I know that, if you didn't…

Den Hollander:

      Is there anybody who has been admitted to this court who is a lawyer, who is a resident of Manhattan, who doesn't have taxpayer status.  It's taxpayer status your honor.

Judge Calabresi:

      I don't know, I don't know.  I am just curious.

Den Hollander:

      No.  That is as close, that is close I got it.  If the court decides to dismiss on the fact that I didn't go into specific detail, that I am assuming alleging standing on taxpayer status, then I obviously, I would request a remand in which I am allowed to basically, to put in that sentence.  That is all that it would be a sentence:  I am a taxpayer in New York and the federal government.

Judge Calabresi:

      Generally taxpayers do not have standing to bring claims.  They do have standing to bring limited time, limiting *Flasts* do have standing to bring claims with respect to Establishment that has been.

      Now in bringing such a claim, does one have to have a plausible Establishment claim, or can one just come in as a taxpayer and say Establishment and then get standing?

Den Hollander:

      I think it would depend upon whether you are looking at standing.  So that is 12(b)(1).  I don't believe the plausible standard that applies to 12(b)(6) applies to 12(b)(1).  So I believe all that is necessary under the 12(b)(1) standing, which is what was district court dismissed on, is the allegation, is that you are bringing in an Establishment Clause.  They didn't you go into the requirements of [taxpayer] standing and the require…

Judge Calabresi:

      We have any number, in any number of cases in order for someone to make a claim to get, they have to have a claim that is plausible on it.  See, I am not reaching, I am not talking about the whole other set of claims that you are making with respect to Women's Studies.

      I am just asking about standing, taxpayer standing as against individual standing with respect to Establishment.  Whether a person can create jurisdiction simply, by using the words Establishment and taxpayer, or whether you need something.  And my problem is that we have the *Allen* case in this circuit, which suggests that what is a religion is fairly narrowly defined for Establishment purposes.

Den Hollander:

      Could I just address the Allen case?

      In the Allen case, which was a criminal case, the court did not make a finding of "nuclearism" as a religion.  The court dismissed that case based upon the fact that the statute, which was destruction of government property, did not aid religion.  In other words, so was the aiding, if you look at the *Lemon* test, it was which was the aiding of religion.  That was the court's decision in *U.S. v. Allen*.  It was not that "nuclearism" reached the level of being a religion as defined by the earlier Supreme Court cases *Seeger* and *Welch*.

      Now if you go in and you just make a conclusory statement that, if I went in as a conclusory statement that feminism is a religion, that is not enough.  For standing purposes, you have to come up with some basic allegations of basic facts.

      You look at the amended complaint, and I believe in its pages 13 through 15, there's plenty of allegations of basic facts.  And you then assume those allegations true and the inferences of feminism are religion.  But once again, this is all allegation.  And there's been no facts yet in this case despite what the lower court said.

      That's one of my main arguments here, that the lower court made a finding of fact on a 12(b)(1) dismissal motion.  There is no evidence, there is no judicial notice.  And then, after making that finding of fact that feminism was not a religion, it then went on to use the backup of the 12(b)(6), which I couldn't understand because if the court didn't have jurisdiction under 12(b)(1), how could it make a 12(b)(6) finding.  Now you can do that, but I don't think the district court can do it.

Judge Calabresi:

      Thank you, you reserved 2 minutes.

Den Hollander:
        Yes I did thank you.

Judge Calabresi:
        We will hear from a variety of other people.

Columbia University's Attorney:
        May it please the court that the complaint against Columbia University obviously is not an Establishment Clause claim but that the claim that the teaching of women's studies constitutes sex discrimination.
        The dismissal of the complaint was appropriate both because the plaintiff lacks standing and also because he failed to state a claim for relief with respect to standing.
        The plaintiff has not alleged any injury.  In fact the simple and essential point here is that he never took any Women's Studies class, so whatever harm might be inflicted in such a class was not inflicted on him.  As to this plaintiff, the concrete and particularized harm that would confer standing simply is not present.
        The plaintiff also complained of some kind of anti-male animus that emanates across the university as a result of the teaching of Women's Studies.  But that is precisely the non-specific and non-particularized harm that would not confer standing.
        He also complains that there are no classes denominated Men's Studies.  But again, there is no concrete allegation of injury to him.  He is not alleging any job any degree or any other opportunity that he didn't receive.  All he is alleging is that nobody at Columbia is teaching what he wants to hear:  that America is truly a matriarchy, that men are at risk of paternity fraud, and so on.  That is not an injury that would confer standing with respect to the failure to state a claim.
        Clearly men are not excluded from Women's Studies courses, and there are no fact allegations in the complaint suggesting that men who do take such courses are treated any differently than women.
        The plaintiff alleges that if Women's Studies is to be taught at all, it is necessary that there be some Men's Studies curriculum.  But even putting aside the fact that there are thousands and thousands of courses at Columbia that do deal with the issues relevant to men and that are taught by men, there's simply no legal requirement that each course or department be offset by some contrasting or opposite course or department.  An African studies department for example does not require a white studies department.
        The complaint in the case really is not a allegation of any kind of discriminatory conduct.  It is an attack on a body of ideas, and that does not state a claim for discrimination.
        Finally, if I may, I think it is important to my client to mention the First Amendment implications of this case.  The plaintiff asked the district court to make a judgment with respect to the validity and legitimacy of ideas.  He asked for judicial finding that even teaching Women's Studies is discriminatory, and for an order that would either ban the teaching of Women's Studies or mandate a contrary curriculum.
        The Supreme Court has recognized the right of academic freedom that derives from the First Amendment and a judicial determination of which ideas are permissible and which impermissible of what may be taught and what may not be taught and what must be taught would strike at the very heart of that freedom. Thank you.

U.S. Attorney:

Good afternoon, your honors,.

May it may please the court, Jean-David Barnea from the U.S. Attorney's office for the U.S. Department of Education.

The district court properly dismissed the plaintiff's constitutional claims against the federal defendants as frivolous and for lack of standing.  As to the Establishment Clause claim, the most obvious reason why the district court dismissed the case was because feminism is not a religion based on it's common sense abilities to review the allegations complaint under Twombly and Iqbal while….

Judge Calabresi:

Let me explore that a moment.

We can't decide the merits under Justice Scalia's opinions and *Steele* I believe without first deciding whether there is standing.  So how do we decide standing with respect to an Establishment claim without looking at the merits, you are saying, of whether feminism is a establishment of religion.  Or do we look to whether a plausible, that is he has to allege a plausible religion in order to get into taxpayer standing.

U.S. Attorney:

Your honor, in the federal government's brief, we did not contest that plaintiff had taxpayer standing to bring his Establishment Clause claim.  I haven't researched this extensively for this case…

Judge Calabresi:

Well, I know you haven't, but that's a problem that you didn't do that because that's the first question, that's a question of jurisdiction.  The Supreme Court tells us that we have to look at that question first.  So it is all very well for the government to say we don't need to worry about whether you have standing or not, we don't fight it.  We will give him standing and then get to the merits, but we can't do that.  We have to decide whether there is standing.

U.S. Attorney:

Well your honor in the govern…

Judge Calabresi:

Is it the position of the United States government that despite the fact there is no allegation that this individual is a taxpayer; he nevertheless satisfies the requirement of class and his progeny—that's extraordinary.

U.S. Attorney:

Well, your honor, I believe there is case law that doesn't…

Judge Calabresi:

And furthermore I take it, it is the position of the United State government that an Establishment Clause challenge by a taxpayer status need not recite all the statutes, which

5

you then add in your brief over two or three pages, but that they need not be set forth in the complaint.  Do you realize the enormity of that?

Based on that position and that concession, taxpayer status is granted to anyone based upon whatever it is they want to say in some general fashion, and that the cases are meaningless.

U.S. Attorney:

Your honor this complaint was filed pro se and so the government believe…

Judge Calabresi:

I don't care if it was filed pro se.

We have to decide jurisdiction and you're standing here and telling us that somebody can come in and get taxpayer standing with no allegations of any sort and that we as a court have jurisdiction to decide the merit.  Somebody comes in and says bananas are a religion, therefore, I was injured in something or other, and I have standing as a taxpayer to claim that that some wrong was done.  That's just what you conceded.

U.S. Attorney:

Well, your honor, that's what the ability of a court to dismiss for frivolousness.

Judge Calabresi:

I'm sorry.

U.S. Attorney:

That those kinds of allegations are properly dismissed as frivolous.  But once a person who appears to be a taxpayer from the face of the complaint raises an Establishment Clause claim, it doesn't appear that the proper basis for dismissal is lack of standing…

Judge Calabresi:

The bottom line nevertheless is he does not have to say he is a taxpayer according to you, and he does not have to set forth the federal statutes which are part of the *Flast* analysis.

U.S. Attorney:

If he is a pro se plaintiff, the court can sort of read those into his complaint for him.

Judge Calabresi:

Can read anything?  Ok thank you.

New York State Attorney:

Good morning may it please the court my name is Patrick Walsh on behalf of the state defendants

Judge Calabresi:
    Good to see you again Mr. Walsh.

New York State Attorney:
    Thank you your honor.
    With respect to the taxpayer standing question, I think the Supreme Court's decision in *Hein* as well as this court's decision in *Altman* makes it clear that this is exactly the type of case for which taxpayer standing should not be expanded.  And I'll note that in the plurality decision in *Hein*, two of the justices that signed the decision were of the opinion that they were in effect overruling *Flast*.  Now…

Judge Calabresi:
    Only two.

New York State Attorney:
    I understand but I just…

Judge Calabresi:
    That's not enough to undercut our cases, I mean our cases stand unless the Supreme Court does away with them.

New York State Attorney:
    I understand your honor.  I am only underscoring the point that the court and this court has long believed that *Flast* is a very narrow exception.  So certainly the notion that you can simply allege whether it be plausible or implausible in Establishment Clause claim

Judge Calabresi:
    Is your argument that in an establishment clause claim, the assertion that it is an establishment has to be plausible in order to create taxpayer standing?

New York State Attorney:
    Yes your honor, I think it is built into the second requirement of Flast itself.

Judge Calabresi:
    And do you also say that a taxpayer has to assert that he is a taxpayer and assert the various things that *Flast* statutes and so on requires?

New York State Attorney:
    I do your honor.
    We defended the taxpayer standing question on the merits of taxpayer standing in deference to the fact that it might be possible to read into the complaint.  But I do agree with the court that ordinarily it should be alleged explicitly.  So I am in complete agreement.  So I don't think there is taxpayer standing here.
    There's no plausible allegation due to the *Allen* case that there's actually a religion of feminism.  On that basis, as the court noted, there has to be a limitation within

7

taxpayer standing and establishment clause cases based on plausibility of your alleged infringement.  That hasn't been satisfied here.

In my brief time remaining unless the court has further issues with regard to standing, I'll note that even if there were standing in this case and even if feminism were a religion, none of the state's religious neutral secular activity amounts to a violation of the Establishment Clause.  The granting of what's colloquial known as Bundy aid based on the number of degrees is completely neutral with regard to religion substance of class content et al.  Similarly, the approval of degree programs is done on the basis of secular criteria the …

Judge Straub:

But your friend here alleges ad nauseam the involvement of the state in setting forth absolute and strictly defined feminism requirements, and he's attacking feminism as a religion, and he says you are responsible for requiring it.

New York State Attorney:

Well I think the only allegation he makes that ties the state to requiring women's studies at Columbia is his claim that a 1993 Regent's report, which in very general terms, calls for in essence diversity and opportunity within education amounts to the state requiring feminism in the form of women's studies program at Columbia.

I see no link whatsoever between that 1993 Regents report and any academic decisions made by universities within the state system.  Certainly nothing in the Regents report, nothing in any statute, regulation or state policy explicitly or implicitly requires the establishment of women's studies programs at universities.

Den Hollander:

Just in the last part by Attorney Walsh

First of all, *Hein* specifically said it was not overruling *Flast*.

Second, if you look at that 1990, it's the 1990 *Equity for Women's Report*, it is the policy statement by the Regents.  The Regents are the legislature.  They decide what goes on in higher education.  If you look through it it's very specific.  I am not going to bother reading it through because you have the sites to it in the complaint.

It's very specific, such things as change in thought patterns to female friendly strategies.

Back to, I think this is very interesting, whether the allegations in the complaint have to be plausible, I think the allegations for standing in a complaint are generally accepted as true and then reasonable inferences are made from then.  I believe that as far as the fact that I brought an Establishment Clause action, I believe the complaint complies to that.

Did I specifically say that I was a taxpayer in that complaint, no I did not.  Then I would request the court to send me back to the district court, so I can add that one sentence…

Judge Straub:

How many times did you amend?

Den Hollander:
    Once.

Judge Straub:
    Once, so did you ask for a further amendment?

Den Hollander:
    No it was as of right as I recall.

Judge Straub:
    No, one amendment you have is of right.

Den Hollander:
    That was the amendment I did.

Judge Straub:
    Did you ask you a further amendment after the court said there was no standing?

Den Hollander:
    No at that point, the moment that I learned about the standing was the decision of the court. I was thinking of 59(e) reconsideration but…

Judge Straub:
    But did you ask?

Den Hollander:
    No, I did not your honor.

Judge Straub:
    Yes, but you first had the Magistrate judge's report.

Den Hollander:
    That's correct your honor

Judge Straub:
    You objected to that but you didn't ask therein to leave to amend should the district court hold against you.

Den Hollander:
    No I did not I objected to…

Judge Straub:
    The second time after he did hold against, you didn't come back and say give me a chance to amend.

Den Hollander:

      That's correct your honor may I clarify? Magistrate's report didn't touch…

Judge Straub:

      Are you a lawyer, are you?

Den Hollander:

      I am your honor.

      The magistrate report did not touch upon the Establishment Clause.  In my objections, I specifically objected that the magistrate's report did not address the Establishment Clause claims.  The first time the establishment clause claims were addressed by the lower court were addressed by the district judge in his decision.

Judge Straub:

      Wasn't there one case that you brought where you were denied leave to amend?

Den Hollander:

      Not that I am aware of but there…

Judge Calabresi:

      Why should the magistrate judge have addressed the Establishment Clause if you didn't allege that you were a taxpayer?

Den Hollander:

      I would normally think that when a judge…

Judge Calabresi:

      No, I mean if it is necessary to Establishment Clause to be a taxpayer and you didn't make that allegation.  Why should the magistrate have discussed it.  Then given he didn't discuss it for that reason, you could have asked for an amendment so that it would have to be.

Den Hollander:

      No, had the magistrate put in that he was dismissing it because I did not allege that I was a taxpayer, that I did not specifically put those words in there, then of course I'd request an amendment.  Obviously and once again, you can't read what a judge's mind says.

      But I think this is kind of interesting in that you may end up taking the plausibility standard for the 12(b)(6), which is *Ashcroft v. Iqbal* and applying it to standing, which my understanding has not yet been done in order to determine whether a complaint satisfies a requirement.

Judge Calabresi:

      Thank you very much I have enjoyed hearing from all of you and we stand adjourned.