UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ROY DEN HOLLANDER,

                        Plaintiff,

       -against-

MEMBERS OF THE BOARD OF
REGENTS OF THE UNIVERSITY OF
THE STATE OF NEW YORK, in their
official and individual capacities, *et al.*,

                        Defendants.

10 Civ. 9277 (LTS)(HBP)

**ORIGINAL
FILED BY ECF**

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE
STATE DEFENDANTS' MOTION TO DISMISS THE COMPLAINT**

ERIC T. SCHNEIDERMAN
Attorney General of the
 State of New York
<u>Attorney for State Defendants</u>
120 Broadway - 24th Floor
New York, New York 10271
(212) 416-8634

CLEMENT J. COLUCCI
Assistant Attorney General
   <u>Of Counsel</u>

## **TABLE OF CONTENTS**

**Pages**

Table of Authorities ................................................................................................................. ii

Preliminary Statement ............................................................................................................... 1

ARGUMENT .............................................................................................................................. 2

    POINT I    PLAINTIFF IS PRECLUDED FROM RELITIGATING STANDING, EVEN ON A CLEARER THEORY, WHEN THE FACTS SUPPORTING THAT THEORY WERE AVAILABLE FOR USE IN THE PRIOR ACTION ........................................................ 2

    POINT II    THE ESTABLISHMENT CLAUSE CLAIMS MUST BE DISMISSED BECAUSE "FEMINISM" IS NOT A RELIGION AND THE STATE DEFENDANTS' ACTIVITIES DO NOT TEND TO ESTABLISH RELIGION ............................................................ 4

        A.  Under Second Circuit Precedent, "Feminism" is Not a Religion ......... 5

        B.  The State Defendants' Activities Would Not Constitute an Establishment of Religion if Feminism Were a Religion ..................... 6

            1.  *Program Registration* ........................................................ 6
            2.  *Bundy Aid* .......................................................................... 9

CONCLUSION ........................................................................................................................ 10

## **TABLE OF AUTHORITIES**

**Cases** **Pages**

*Arnold Graphics Indus., Inc. v. Indep. Agent Ctr.,*
  775 F.2d 38 (2d Cir. 1985) ............................................................................................. 4

*Bonilla v. Smithfield Assocs. LLC*,
  No. 09 Civ. 1549, 2009 WL 4457304 (S.D.N.Y. Dec. 4, 2009) .............................................. 2

*Coll. Sports Council v. Dep't of Educ.,*
  465 F.3d 20 (D.C. Cir. 2006) ......................................................................................... 3

*Dozier v. Ford Motor Co.,*
  702 F.2d 1189 (D.C. Cir. 1983) ..................................................................................... 4

*Hanig v. Yorktown Cent. Sch. Dist.*,
  384 F. Supp. 2d 710 (S.D.N.Y. 2005) ............................................................................. 2

*Hollander v. Institute for Research on Women and Gender at Columbia University, et al.,*
  No. 08 Civ. 7286 (LAK)(SDNY) (*"Hollander I"*)............................................................ passim

*Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*,
  456 U.S. 694 (1982) .................................................................................................... 3

*Magnus Electronics, Inc. v. La Republica Argentina,*
  830 F.2d 1396 (7th Cir. 1987) ....................................................................................... 4

*Malnak v. Yogi,*
  592 F.2d 197 (3d Cir. 1979) (Adams, J., concurring) ............................................................ 6

*Mrazek v. Suffolk Cnty. Bd. of Elections*,
  630 F.2d 890 (2d Cir. 1980) .......................................................................................... 3

*Perry v. Sheahan*,
  222 F.3d 309 (7th Cir. 2000) ...................................................................................... 3, 4

*United States v. Allen,*
  760 F.2d 447 (2d Cir. 1985) ...................................................................................... 5, 6

*U.S. v. Meyers,*
  906 F. Supp. 1494 (D. Wyo. 1995) ................................................................................. 6

## TABLE OF AUTHORITIES

**Pages**

**Federal Constitution**

First Amendment
    Establishment Clause ............................................................................................... passim
    Free Exercise Clause ......................................................................................................... 6


**Federal Rules**

Federal Rules of Civil Procedure
    Rule 12(b)(1) ..................................................................................................................... 1
    Rule 12(b)(6) ..................................................................................................................... 1


**State Statutes and Regulations**

N.Y. Educ. Law
    § 207 .................................................................................................................................. 8

8 N.Y.C.R.R.
    3.47 .................................................................................................................................... 8

    52.1 .................................................................................................................................... 8
        52.1(b)(3) ..................................................................................................................... 7
        52.1(d) ......................................................................................................................... 7
        52.1(f) .......................................................................................................................... 7
    52.2 .................................................................................................................................... 8
        52.2(c)(1) ..................................................................................................................... 7
        52.2(c)(2) ..................................................................................................................... 7

    53.3(d) .............................................................................................................................. 7


**Other Authorities**

18 J. Moore, *Moore's Federal Practice*, ¶ 131.21[1](3d ed.2010) ................................................. 4

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
ROY DEN HOLLANDER,                              :
                                                :
              Plaintiff,                   :
                                                :
            -against-                       :       10 Civ. 9277 (LTS) (HBP)
                                                :
MEMBERS OF THE BOARD OF                         :
REGENTS OF THE UNIVERSITY OF                    :
THE STATE OF NEW YORK, in their                 :
official and individual capacities, *et al.*,   :
                                                :
             Defendants.                  :
-------------------------------------------------------X

**REPLY MEMORANDUM OF LAW IN FURTHER
SUPPORT OF THE STATE DEFENDANTS' MOTION
TO DISMISS THE COMPLAINT**

        Defendants the members of the Board of Regents of the University of the State of New York; Merryl Tisch, Chancellor of the Board of Regents; Commissioner David M. Steiner of the New York State Education Department ("SED"); and Elsa Magee, Acting President of the New York State Higher Education Services Corporation ("HESC") (collectively, the "State Defendants"), by their attorney, ERIC T. SCHNEIDERMAN, Attorney General of the State of New York, respectfully submit this reply memorandum of law in further support of their motion to dismiss the complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

**PRELIMINARY STATEMENT**

        As demonstrated in the State Defendants' moving brief, plaintiff's claims are jurisdictionally and substantively flawed, and must be dismissed. On the question of standing, whatever the merits of plaintiff's claim that he satisfies the standards for taxpayer standing in Establishment Clause cases, his failure to establish it in the earlier related lawsuit, *Hollander v.*

*Institute for Research on Women and Gender at Columbia University, et al.*, 08 Civ. 7286 (LAK) *("Hollander I")*, precludes him from relitigating it now.  On the merits, the complaint should be dismissed because, under the test applicable in the Second Circuit, "Feminism" is not a religion, and, furthermore, the State Defendants' activities would not constitute an establishment of religion if "Feminism" were a religion.[1]  In opposition, plaintiff fails to offer any factual averments or legal authority sufficient to salvage his claims.  Accordingly, the State Defendants' motion to dismiss should be granted in its entirety.

## ARGUMENT

## POINT I

### PLAINTIFF IS PRECLUDED FROM RELITIGATING STANDING, EVEN ON A CLEARER THEORY, WHEN THE FACTS SUPPORTING THAT THEORY WERE AVAILABLE FOR USE IN THE PRIOR ACTION

Plaintiff now claims, more explicitly than before, that he has taxpayer standing to assert his Establishment Clause claims.  (Compl., ¶¶ 70-91; Pl. Mem., pp. 4-6)[2]  Regardless of the merits of this contention, under well-established principles of *res judicata*, he cannot now assert

---

[1]    Plaintiff appears to have abandoned any claims against HESC's Acting President.  His opposition brief makes no mention of any action by HESC that, he contends, violates the Establishment Clause.  Nor does plaintiff contest the State Defendants' argument, *see* Memorandum of Law in Support of the State Defendants' Motion to Dismiss the Complaint ("State Def. Mem."), pp. 22-23, that providing financial aid to *individual students*, which is HESC's function, does not violate the Establishment Clause even if the students use that aid to pursue explicitly religious education.  *See* Memorandum of Law in Opposition to the State and U.S. Defendants' Motions to Dismiss the Complaint ("Pl. Mem."), pp. 24-25.  Thus, plaintiff's claims against Acting President Magee should be deemed abandoned and dismissed in their entirety.  *See Bonilla v. Smithfield Assocs. LLC*, No. 09 Civ. 1549, 2009 WL 4457304, at *4 (S.D.N.Y. Dec. 4, 2009) (plaintiff's failure to respond to two out of three of defendant's arguments for dismissal constitutes abandonment of the claim and calls for dismissal as a matter of law); *Hanig v. Yorktown Cent. Sch. Dist.*, 384 F. Supp. 2d 710, 723 (S.D.N.Y. 2005) ("[B]ecause plaintiff did not address defendant's motion to dismiss with regard to this claim, it is deemed abandoned and is hereby dismissed.").

[2]    Plaintiff also refers to non-economic standing conferred by his exposure to unwelcome religious messages, *see* Pl. Mem., pp. 11-13, but this is indistinguishable from his earlier asserted ground for standing.

such standing in this action. In affirming the dismissal of *Hollander I* for lack of standing, the Second Circuit specifically stated, "Nor has plaintiff made out the requirements of taxpayer standing for his Establishment Clause claim." (Declaration of Roy Den Hollander ["Hollander Decl."], Exhibit D, Summary Order dated April 16, 2010, pp. 3-4) Plaintiff argued to the Circuit that the complaint, properly read, had adequately alleged taxpayer standing. (*Id.*, Exhibit E, Appellate Oral Argument Transcript, p. 2) Nothing in the present complaint suggests that plaintiff's taxpayer standing -- if, indeed, he has it -- is a new development; if he has taxpayer standing now, he had it at the commencement of *Hollander I*, and that is fatal to his claim.

The State Defendants do not disagree with plaintiff -- having said it first, *see* State Def. Mem., p. 10 -- that a dismissal for lack of standing, or subject matter jurisdiction generally, is not a binding determination on the *merits* of a claim. (Pl. Mem., pp. 4-5) It *is*, however, a binding determination on the standing question itself. *See Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 704, n. 9 (1982) ("[i]t has long been the rule that principles of *res judicata* apply to jurisdictional determinations"); *Coll. Sports Council v. Dep't of Educ.,* 465 F.3d 20, 22-23 (D.C. Cir. 2006) (affirming, on *res judicata* grounds, determination that plaintiffs lacked standing); *Perry v. Sheahan*, 222 F.3d 309, 318 (7th Cir. 2000) ("The determination that Perry lacked standing in *Perry I* precludes relitigation of the same standing argument in *Perry II.*"); *Mrazek v. Suffolk Cnty. Bd. of Elections*, 630 F.2d 890, 898, n. 10 (2d Cir. 1980) ("the issue of Mrazek's and Migliore's standing, by all accounts, has been determined adversely to them in the state courts and that decision is binding upon us under principles of *res judicata*").

That plaintiff now makes his taxpayer standing theory more explicit, and perhaps argues it better, does not change the preclusive effect of the prior determination in *Hollander I* that plaintiff lacked standing. The facts now relied upon to support his standing existed at the time of

3

the original complaint and plaintiff had a full and fair opportunity to raise those facts at that time. "Only facts arising after the complaint was dismissed -- or at least after the final opportunity to present facts to the court -- can operate to defeat the bar on issue preclusion." *Perry,* 222 F.3d at 318.  *See also Arnold Graphics Indus., Inc. v. Indep. Agent Ctr.,* 775 F.2d 38, 41 (2d Cir. 1985) (action dismissed for want of subject matter jurisdiction can be brought again "where *in the interim* facts have occurred which now establish jurisdiction") (*quotation marks and citations omitted*) (emphasis added))[3]; *Dozier v. Ford Motor Co.,* 702 F.2d 1189, 1192-93 (D.C. Cir. 1983) ("curable defect" rule concerning subject matter jurisdiction applies only to a "jurisdictional deficiency [that] could be remedied by *occurrences subsequent to the original dismissal*") (emphasis in original).

Plaintiff's original complaint in *Hollander I* was dismissed for lack of standing.  That plaintiff has done a better job now of arguing a standing theory he had available then is no reason "to allow a plaintiff to begin the same suit over and over again in the same court, each time alleging additional facts that the plaintiff was aware of from the beginning of the suit, until it finally satisfies the jurisdictional requirements." *Magnus Electronics, Inc. v. La Republica Argentina,* 830 F.2d 1396, 1401 (7th Cir. 1987).  Because he is precluded from relitigating his standing in this new action, his complaint should be dismissed.

### POINT II

### THE ESTABLISHMENT CLAUSE CLAIMS MUST BE DISMISSED BECAUSE "FEMINISM" IS NOT A RELIGION AND THE STATE DEFENDANTS' ACTIVITIES DO NOT TEND TO ESTABLISH RELIGION

On the merits, plaintiff's claims must be dismissed because, first, "Feminism" is not a

---

[3]    The court cited an earlier edition of *Moore's Federal Practice* that used a different chapter numbering system. The point cited is now found at 18 J. Moore, *Moore's Federal Practice*, ¶ 131.21[1] (3d ed. 2010).

4

religion under the directly governing case law, and, second, no actions by the State Defendants that plaintiff complains about would constitute an Establishment Clause violation even if "Feminism" were deemed a religion. Instead, plaintiff offers some seemingly random observations unconnected with any legal theory of why they amount to an Establishment Clause violation.

A.     **Under Second Circuit Precedent, "Feminism" is Not a Religion**

In arguing that "feminism" is a religion for purposes of the Establishment Clause, plaintiff asks this Court to ignore Second Circuit precedent directly on point and adhere instead to directly contrary Third Circuit precedent. (Pl. Mem., pp. 13-16) Under Second Circuit authority, in Establishment Clause cases, "religion" is defined not by the individual views, however sincere, of a plaintiff, but by a general societal consensus about what is or is not religion; and the general societal consensus is that "Feminism" is a political and social doctrine, not a religion.

The Second Circuit squarely held in *United States v. Allen*, 760 F.2d 447, 450 (2d Cir. 1985), that "religion" must be defined differently, and more narrowly, in Establishment Clause cases than it is in Free Exercise cases:

> In so holding [that "nuclearism" is a political, not a religious view], we adopt for establishment clause purposes the conventional, majority view, rather than appellants' view, of what is religious and what is political. Consequently, we must acknowledge that "religion" can have a different meaning depending on which religion clause of the First Amendment is at issue. . . . That the Government advances what is, conceivably, someone's religion, however, does not make what most citizens consider a political or military action a violation of the establishment clause.

*Allen,* 760 F.2d at 450. This clear and explicit holding belies plaintiff's assertion that "the *Allen* court did not rule on that issue." (Pl. Mem., p. 15)

5

Plaintiff nonetheless urges the Court to ignore this binding precedent and adopt Judge Adams's concurring analysis in *Malnak v. Yogi,* 592 F.2d 197, 207-10 (3d Cir. 1979) (Adams, J., concurring), which endorses a single definition of "religion" applicable to both Establishment Clause and Free Exercise Clause cases. (Pl. Mem., pp. 14-15) But that view squarely contradicts the Second Circuit's later holding in *Allen*. *See U.S. v. Meyers,* 906 F. Supp. 1494, 1503, n. 11 (D. Wyo. 1995) (recognizing direct conflict between *Allen* and *Malnak*). The State Defendants have previously explained the reasons supporting the Second Circuit's rule, *see* State Def. Mem., pp. 11-16, and will not repeat them here. It is enough now to reiterate that the Second Circuit has decided the issue, and decided it against plaintiff's preferred view. Under the Second Circuit's governing "conventional, majority view" test of what is religious and what is, instead, political or social, "Feminism" is not a religion. Therefore, the complaint should be dismissed.

**B.    The State Defendants' Activities Would Not Constitute an Establishment of Religion if Feminism Were a Religion**

But even assuming, *arguendo*, that "Feminism" is, under some definition, deemed a religion, neither the complaint nor plaintiff's brief sets out any actions by the State Defendants that would violate the Establishment Clause. What the State Defendants do in registering academic programs and funding institutions through Bundy aid it does the same way -- and lawfully -- for plainly secular, confessedly religious, and possibly borderline institutions and programs of instruction alike. *See* State Def. Mem., pp. 16-20.

   1.    *Program Registration*: Plaintiff does not contend that the State Defendants' registering indisputably religious programs, such as those offering degrees in the theology of a particular sect, violates the Establishment Clause, so it is hard to understand what Establishment Clause objection there might be to registering programs in women's studies at institutions that

6

choose to offer them even if "Feminism" were a religion. While Plaintiff does allege that the State "requir[es] adherence to Feminist tenets in higher education" by the mere fact of approving programs that, in his view, teach them, *see* Pl. Mem., pp. 3-4, nothing in the complaint suggests that the State obliges any institution to offer such programs, or insists that, if an institution chooses to offer such programs, they conform to some State-prescribed orthodoxy.

The Regents and the Commissioner register only individual curricula, 8 N.Y.C.R.R. § 52.1(d), the content and duration of which "shall be designed to implement their purposes," 8 N.Y.C.R.R. § 52.1(b)(3). Any individual courses offered must be part of some registered curriculum, 8 N.Y.C.R.R. § 52.1(f), must be offered with sufficient frequency to allow timely progress, 8 N.Y.C.R.R. § 52.2(c)(2), and must have their goals and objectives clearly defined in writing, 8 N.Y.C.R.R. §§ 52.1(b)(3), 52.2(c)(1), 53.3(d). These requirements -- that curricula have courses, that they be related to the overall curriculum, that they be offered with reasonable frequency, and that they have goals and objectives and describe them in writing -- apply alike to all programs subject to registration, from the most obviously secular, like a Ph.D. program in physics, to the most explicitly religious, like an S.T.D. program in sacred theology. By these methods, the State "gives its stamp of approval," *see* Pl. Mem., p. 3, to all curricula, religious or otherwise, that meet these, and other, secular, academic requirements. *See* State Def. Mem., pp. 4-7 for more details about these requirements. Such a "stamp of approval" for Columbia University's undergraduate Women's Studies program no more establishes "Feminism" than approving Fordham University's Ph.D. program in Theology establishes Roman Catholicism, and, in multiple opportunities in this case and in *Hollander I*, plaintiff has never so much as hinted that the latter violates the Establishment Clause.

Once these secular, academic criteria are satisfied, the State has no authority under the regulations over the viewpoint, whether secular or religious, expressed in individual courses or the program as a whole.  By statute, moreover, the Regents cannot issue regulations affecting the freedom of seminaries to determine correct religious doctrine.  *See* N.Y. Educ. Law § 207.

Curiously, and to no apparent purpose, plaintiff suggests that the very existence of N.Y. Educ. Law § 207, specifically carving out questions of religious doctrine from the purview of State regulation, shows, by negative implication, that the State *does* have power to determine what is orthodox in secular subjects -- though how that helps him when the very basis of his claim is that "Feminism" is a religion and women's studies programs are religious is unexplained. (Pl. Mem., pp. 3-4)  But the Commissioner's regulations, the source of current State authority, do not themselves empower the Commissioner and the Regents to regulate the viewpoint taught in secular courses or curricula.[4]  *See*, *e.g.*, 8 N.Y.C.R.R. §§ 3.47, 52.1, 52.2.  At most, plaintiff's argument proves that New York statutes would not forbid such regulations from being enacted, as they explicitly do for religious subjects.  It sheds no light, however, on what powers the Regents and the Commissioner now have under the current regulations.  Furthermore, it is unclear what bearing this argument about control over secular course content has on the claim that women's studies programs are religious, not secular, and that registering them violates the Establishment Clause.

Because plaintiff has failed to allege facts or articulate a legal theory under which the State's curriculum registration requirements or practices violate the Establishment Clause, the claim should be dismissed.

---

[4]   The requirement that a curriculum offer a sufficient number of courses relevant to its subject matter and that the courses *have* content and describe it in writing is a far cry from the type of course-specific content control plaintiff imagines, without basis, that the State Defendants possess.  *See* Pl. Mem., pp. 3-4.

  2. *Bundy Aid*:  In opposition, plaintiff has likewise asserted some random complaints about Bundy aid without addressing any issue relevant to its constitutionality under the Establishment Clause.  *See* Pl. Mem., pp. 22-25  Again, it is difficult to understand the basis of plaintiff's Establishment Clause objection.  Plaintiff does not dispute that, as previously demonstrated, Bundy aid is distributed per student / per degree program without regard to the religious or secular character of the institution, program, or course of study, and that how much Bundy aid an institution receives is purely a function of how many students individually choose to attend.  *See* State Def. Mem., pp. 19-22  If Fordham receives Bundy aid when a student enrolls in its Theology Ph.D. program on this religion-neutral basis without running afoul of the Establishment Clause -- and plaintiff does not appear to contend otherwise -- then there can be no Establishment Clause objection to Columbia receiving Bundy aid when a student enrolls in an undergraduate program in Women's Studies on the same religion-neutral basis.  (*Id.*)

 Because Bundy aid is disbursed on a religion-neutral manner based on choices made by individual students about what colleges to attend and what programs to enroll in, plaintiff's Establishment Clause claim must be dismissed.

## CONCLUSION

For the reasons given, the complaint against the State Defendants should be dismissed, with prejudice, together with costs, disbursements, and such further relief as the Court deems just and proper.

Dated: New York, New York
April 1, 2011

                          Respectfully submitted,

                          ERIC T. SCHNEIDERMAN
                          Attorney General of the
                             State of New York
                          <u>Attorney for State Defendants</u>
                          By:
                                /S/
                          _____
                          CLEMENT J. COLUCCI
                          Assistant Attorney General
                          120 Broadway
                          New York, New York 10271
                          (212) 416-8634
                          Clement.Colucci@ag.ny.gov