```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

ROY DEN HOLLANDER,                  :
on behalf of himself and all
others similarly situated,          :

                    Plaintiff,      :
                                        10 Civ. 9277 (LTS)(HBP)
    -against-                       :

                                        REPORT AND
MEMBERS OF THE BOARD OF REGENTS     :   RECOMMENDATION
OF THE UNIVERSITY OF THE STATE OF
NEW YORK, in their official         :
and individual capacities;
CHANCELLOR OF THE BOARD OF          :
REGENTS, MERRYL H. TISCH, in her
official and individual capacity;   :
NEW YORK STATE COMMISSIONER OF
THE DEPARTMENT OF EDUCATION,        :
DAVID M. STEINER, in his official
and individual capacity;            :
ACTING PRESIDENT OF THE NEW YORK
STATE HIGHER EDUCATION SERVICES     :
CORP., ELSA MAGEE, in her official
and individual capacity;            :
U.S. DEPARTMENT OF EDUCATION, and
U.S. SECRETARY OF EDUCATION, ARNE   :
DUNCAN, in his official capacity,
                                    :
                    Defendants.

----------------------------------X
```

            PITMAN, United States Magistrate Judge:


            TO THE HONORABLE LAURA TAYLOR SWAIN, United States

District Judge,

I.   <u>Introduction</u>

Plaintiff Roy Den Hollander commenced this putative
class action <u>pro se</u> against defendants pursuant to the First and
Fourteenth Amendments to the United States Constitution and 42
U.S.C. § 1983 ("Section 1983"), alleging violations of the
Establishment Clause of the First Amendment ("the Establishment
Clause").  Hollander, a Columbia University ("Columbia") Business
School graduate, seeks declaratory and injunctive relief against
defendants for their alleged roles in the establishment of "the
modern-day religion Feminism" at Columbia and its Institute for
Research on Women and Gender ("IRWG").  By notice of motion dated
January 14, 2011, defendants Members of the Board of Regents of
the University of the State of New York, Chancellor of the Board
of Regents Merryl H. Tisch, New York State Commissioner of the
Department of Education David M. Steiner and Acting President of
the New York State Higher Education Services Corp. Elsa Magee
(collectively, the "State Defendants"), move to dismiss Hol-
lander's complaint pursuant to Rule 12(b)(1) and Rule 12(b)(6) of
the Federal Rules of Civil Procedure (Docket Item 7).  By letter
motion dated April 1, 2011, defendants U.S. Department of Educa-
tion and U.S. Secretary of Education Arne Duncan (collectively,
the "Federal Defendants") move to dismiss on the grounds of

collateral estoppel.  By Order dated June 3, 2011, I announced my intention to convert the motions to motions for summary judgment pursuant to Fed.R.Civ.P. 12(d) (Docket Item 17).  For the reasons set forth below, I respectfully recommend that defendants' motions for summary judgment be granted.

II.  <u>Facts</u>

    A.  <u>Parties</u>

       Plaintiff Hollander is an alumnus of the Columbia Business School and a New York State and federal taxpayer (Complaint, dated December 10, 2010 (Docket Item 1) ("Compl."), at ¶ 13).  The putative class consists of Columbia "alumni, students and employees who are New York State and federal taxpayers that find the inculcation and manifestations of Feminism at Columbia offensive" (Compl. at ¶ 14).

       Defendants Members of the Board of Regents of the University of the State of New York ("the Board of Regents") compose the body that, <u>inter alia</u>, regulates state educational institutions, administers funds allocated by the state to the institutions and appoints the Commissioner of the Department of Education.  N.Y. Educ. L. §§ 101, 201.  Defendant Merryl H. Tisch is the Chancellor of the Board of Regents.  Members of the Board

of Regents, http://www.regents.nysed.gov/members/bios/tisch.html
(last visited June 13, 2011).  Defendant David M. Steiner was the
Commissioner of the New York State Department of Education at the
time the complaint was filed.[1]

Defendant Elsa Magee is the acting president of the New
York State Higher Education Services Corporation, a body that
administers New York State financial aid and supports the admin-
istration of federal financial aid.  N.Y. Educ. L. § 652(2); HESC
Directory -- Executive Management and Office of the President,
http://www.hesc.com/content.nsf/CA/HESC_Directory_Executive_Manag
ement_and_Office_of_the_President (last visited June 13, 2011).
Defendant United States Department of Education, inter alia,
provides financial aid to institutions of higher education.  20
U.S.C. §§ 1070(a)(5), 3402(6).  Defendant Arne Duncan is the
United States Secretary of Education and supervises the Depart-
ment of Education.  20 U.S.C. § 3411; Arne Duncan, U.S. Secretary
of Education -- Biography, http://www2.ed.gov/news/staff/bios/dun
can.html (last visited June 13, 2011).

---

[1]On June 15, 2011, Steiner was succeeded by Dr. John B.
King, Jr.  Board of Regents Elects John King Commissioner of
Education, http://www.oms.nysed.gov/press/BORElectsJohn-
KingCOE.html (last visited June 13, 2011).

B.   The Underlying Action

On or about August 18, 2008, Hollander commenced an

action (the "Underlying Action," Docket No. 08 Civ. 7286) against

the same defendants who are in this action, or their predeces-

sors.[2]  He claimed that defendants violated the Establishment

Clause "by aiding the establishment of the religion Feminism"

through Columbia's Women's Studies program.  Hollander also

asserted claims for violations of the Equal Protection Clauses of

the Fifth and Fourteenth Amendments to the United States Consti-

tution, Title IX of the Education Amendments of 1972, 20 U.S.C.

§§ 1681 et seq., and New York Civil Rights Law § 40-c for their

fostering, aiding or carrying out intentional discrimination

---

[2]In the Underlying Action, the defendants were the Board of
Regents of the University of the State of New York, Chancellor of
the Board of Regents Robert M. Bennett, New York State
Commissioner of the Department of Education Richard P. Mills,
President of the New York State Higher Education Services Corp.
James C. Ross, the U.S. Department of Education and U.S.
Secretary of Education Margaret Spellings.  Bennett, Mills, Ross
and Spellings have since been succeeded by Tisch, Steiner, Magee
and Duncan, respectively.  In the Underlying Action, Hollander
also sued the IRWG, the School of Continuing Education at
Columbia and the Trustees of Columbia, but they are not parties
to this action.

Following the commencement of the Underlying Action, William
A. Nosal was added as a class representative.  However, he later
withdrew.  See Hollander v. Inst. for Research on Women & Gender
at Columbia Univ., 372 F. App'x 140, 2010 WL 1508269 at *1 n.1
(2d Cir. Apr. 16, 2010) (unpublished).

against men through the Women's Studies program (First Amended
Class Action Complaint in <u>Hollander v. Inst. for Research on
Women & Gender at Columbia University</u>, 08 Civ. 7286, filed
December 1, 2008 ("Underlying Action Compl.") (Docket Item 17),
at ¶ 1).

         With respect to the Establishment Clause claim, the
complaint in the Underlying Action alleged that

              The establishment clause forbids government action
         that benefits a religion.  A belief system need not be
         theistic in nature to be a religion but rather can stem
         from moral, ethical or even malevolent tenets that are
         held with the strength of traditional religious convic-
         tions.  Gods or goddesses are not needed for a reli-
         gion.

(Underlying Action Compl. at ¶ 4).  The complaint in the Underly-
ing Action alleged that the feminism taught at Columbia and its
IRWG constituted a religion because, <u>inter alia</u>, it promoted
theories with respect to the natural order of males and females,
combined strains of feminist research "into a comprehensive
belief system that has spread throughout Columbia into the
society as a whole" and mandated a lifestyle (Underlying Action
Compl. at ¶ 5).  The complaint in the Underlying Action further
alleged that the IRWG administrators and teachers were akin to
"priestesses" because of their teachings, and that the IRWG
"exalt[ed] certain Feminists to apostle-like status," treated

certain days like feminism holidays and promoted feminism through the Women's Studies program (Underlying Action Compl. at ¶ 6).

Specifically, the complaint in the Underlying Action alleged that the Women's Studies program

> (1) 'instructs, trains, supports, furthers, cultivates and advocates strategies, and tactics for demeaning and abridging the rights of men'; (2) advocates 'that the civil rights of males be diminished or eliminated'; and (3) 'stereotype[s] males as the primary cause for most, if not all, the world's ills throughout history,' while crediting females 'with inherent goodness.'

(Report and Recommendation in Hollander v. Inst. for Research on Women & Gender at Columbia University, 08 Civ. 7286, filed April 15, 2009 ("Report and Recommendation") (Docket Item 33), at 4, quoting Underlying Action Compl. at ¶¶ 75-77).

While the plaintiffs did not allege that they enrolled or attempted to enroll in any Women's Studies courses, the complaint in the Underlying Action alleged that the few males who did participate in the Women's Studies program were discriminated against in various ways (Underlying Action Compl. at ¶ 87).  The plaintiffs alleged that no Men's Studies program existed, but they intended to enroll in such a program as soon as it was offered (Underlying Action Compl. at ¶¶ 223-25).  They stated that the promotion of the Women's Studies program effectively denied class members the opportunity to take Men's Studies courses (Underlying Action Compl. at ¶ 210).

By motions filed on January 9, 2009, all defendants moved to dismiss the Underlying Action Complaint on various grounds, including lack of standing (Docket Items 21, 23 and 25 in <u>Hollander v. Inst. for Research on Women & Gender at Columbia University</u>, 08 Civ. 7286).  On April 15, 2009, the Honorable Kevin Nathaniel Fox, United States Magistrate Judge, issued a Report and Recommendation that recommended a dismissal of all claims for lack of standing (Docket Item 33 in <u>Hollander v. Inst. for Research on Women & Gender at Columbia University</u>, 08 Civ. 7286).  Judge Fox concluded that the plaintiffs lacked standing because their alleged injury, "which is purportedly based upon the content of, or the discriminatory impact flowing from, the Women's Studies program at Columbia, is not an 'injury in fact'" since plaintiffs were neither enrolled in the program nor denied an opportunity to enroll (Report and Recommendation at 8-9). Judge Fox also concluded that any alleged injury stemming from the absence of a Men's Studies program was not concrete and particularized (Report and Recommendation at 9).  By Order dated April 23, 2009, the Honorable Lewis A. Kaplan, United States District Judge, adopted the Report and Recommendation and dismissed the action for lack of standing (Docket Item 36 in <u>Hollander v. Inst. for Research on Women & Gender at Columbia University</u>, 08 Civ. 7286).  Judge Kaplan also dismissed the

8

Establishment Clause claims "on the alternative ground that they
are absurd and utterly without merit" (Order at 2).

On May 1, 2009, plaintiffs filed a Notice of Appeal to
the United States Court of Appeals for the Second Circuit (Docket
Item 38).  They argued on appeal that they had standing to sue as
taxpayers.  Brief of Plaintiffs-Appellants, <u>Hollander v. Inst.</u>
<u>for Research on Women & Gender at Columbia University</u>, No. 09-
1910-cv, 2009 WL 8105887 at *2, *20-*24 (2d Cir. Aug. 25, 2009).
At oral argument, Hollander conceded that he did not make an
express assertion of taxpayer standing for his Establishment
Clause claims in the complaint in the Underlying Action (Tran-
scription of Oral Argument, annexed as Ex. E to Declaration of
Roy Den Hollander in Support of Opposition to Motions to Dismiss,
dated March 8, 2011 ("Hollander Decl.") (Docket Item 15), at 2).
However, he argued that an inference should have been drawn that
he was also asserting New York State and federal taxpayer stand-
ing as a basis of standing (Transcription of Oral Argument at 2).
Hollander also conceded that, in filing his objections to Judge
Fox's Report and Recommendation, he did not ask for leave to
amend the complaint with respect to standing in the event the
court ruled against him (Transcription of Oral Argument at 9-10).
However, he did request a remand from the Second Circuit so he

could amend his complaint to assert taxpayer standing (Transcription of Oral Argument at 2).

By Summary Order dated April 16, 2010, the Second Circuit affirmed the dismissal of the Underlying Action for lack of standing.  Hollander v. Inst. for Research on Women & Gender at Columbia Univ., supra, 372 F. App'x 140, 2010 WL 1508269 at *1.  Specifically, the Court of Appeals held that "plaintiff's claims of harm amount to the kind of speculative harm for which courts cannot confer standing," adding, "[n]or has plaintiff made out the requirements for taxpayer standing for his Establishment Clause claim."  Hollander v. Inst. for Research on Women & Gender at Columbia Univ., supra, 372 F. App'x 140, 2010 WL 1508269 at *1 (citations omitted).

C.   The Present Action

On December 13, 2010, Hollander commenced the present action, seeking declaratory and injunctive relief for violations of the Establishment Clause (Compl.).  His allegations with respect to his Establishment Clause claims are similar to those in the Underlying Action (compare Underlying Action Compl. at ¶¶ 5-6, with Compl. at ¶¶ 50, 53).  In this action, however, Hollander expressly alleges that he has standing as a federal and New York State taxpayer (Compl. at ¶¶ 6, 13; Hollander Decl. at ¶

10

7).[3]  In summary, Hollander alleges taxpayer standing for an economic injury caused by defendants' expenditure of government funds to Columbia's Women's Studies program (Compl. at ¶¶ 72-78). He also alleges, as a non-economic injury, that members of the putative class feel that the "inculcation, manifestation, and exposure of Feminism at Columbia is offensive . . . and makes its members very uncomfortable" (Compl. at ¶ 79).

By notice of motion dated January 14, 2011, the State Defendants move to dismiss Hollander's complaint pursuant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6) (Docket Item 7).  In support of their motion, the State Defendants argue that:  (1) the action should be dismissed on res judicata grounds; and (2) "Feminism" is not a religion and the defendants' actions do not tend to establish religion (Memorandum of Law in Support of the State Defendants' Motion to Dismiss, dated January 14, 2011 (State Defs.' Mem.) (Docket Item 9), at I).  By letter motion dated April 1, 2011, the Federal Defendants move to dismiss on the grounds of collateral estoppel.  In support of their motion, the Federal Defendants argue that Hollander's standing to bring this action was previously determined and cannot be relitigated, and

---

[3]In a supplemental submission, Hollander attached what he describes as 1099 tax forms from 2010 and 2011.  Actually, these documents appear to be pay stubs that detail New York State and federal tax withholdings (Hollander Decl. at ¶ 7 and Ex. F).

that Hollander pleads no facts with respect to taxpayer standing
that were not known to him at the time of the first action
(Letter from Jean-David Barnea to undersigned, dated April 1,
2011, at 2).

In opposition, Hollander makes the following arguments:
(1) because the Underlying Action was dismissed for lack of
standing, the judgment was not on the merits and, thus, claim
preclusion does not apply; (2) issue preclusion does not apply
because the Underlying Action was dismissed for failure to allege
a jurisdictional fact, while the current action alleges that
fact; (3) the plausibility pleading standard applies to both
Fed.R.Civ.P. 12(b)(1) and 12(b)(6); (4) the complaint plausibly
alleges that the class representative satisfies both the taxpayer
and non-economic standing requirements, and (5) the complaint
plausibly alleges Feminism is a religion and that the State
Defendants and U.S. Department of Education aid it in violation
of the Establishment Clause (Memorandum of Law in Opposition to
Defendants' Motions to Dismiss the Complaint, dated March 8, 2011
("Pl.'s Mem.") (Docket Item 11)).

By Order dated June 3, 2011, I announced my intention
to convert the motions to a motion for summary judgment pursuant
to Fed.R.Civ.P. 12(d) and directed the parties to submit addi-
tional materials, if they wished to do so, no later than June 30,

2011 (Docket Item 17).  On June 20, 2011, I received a letter
from the Federal Defendants requesting that their motion to
dismiss not be converted to a motion for summary judgment (Letter
from Jean-David Barnea to undersigned, dated June 20, 2011, at
2).  On June 23, 2011, I received a letter from the State Defen-
dants that "concur[red] with, and adopt[ed], the views expressed"
in the Federal Defendants's letter (Letter from Clement J.
Colucci to undersigned, dated June 24, 2011, at 1).  Because I
conclude that the motions should be granted, defendants are not
prejudiced by the conversion, and I decline their request to
reconsider.  Moreover, Hollander did not object to the conversion
in his subsequent submission, which I received on June 27, 2011
and which consisted of a Statement of Material Facts, Declara-
tion, Memorandum of Law in Opposition to Defendants' Motion for
Summary Judgment and a proposed Second Amended Complaint.

III.  <u>Analysis</u>

   A.  <u>Summary Judgment Standard</u>

        The standards applicable to a motion for summary
judgment are well-settled and require only brief review.

        Summary judgment shall be granted when there is no
        genuine issue of material fact and the moving party is
        entitled to judgment as a matter of law.  Fed.R.Civ.P.
        56(c).  This form of relief is appropriate when, after

                              13

discovery, the party . . . against whom summary judg-
ment is sought has not shown that evidence of an essen-
tial element of her case -- one on which she has the
burden of proof -- exists. See Celotex Corp. v.
Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d
265 (1986). This form of remedy is inappropriate when
the issue to be resolved is both genuine and related to
a disputed material fact. An alleged factual dispute
regarding immaterial or minor facts between the parties
will not defeat an otherwise properly supported motion
for summary judgment. See Howard v. Gleason Corp., 901
F.2d 1154, 1159 (2d Cir. 1990). Moreover, the exis-
tence of a mere scintilla of evidence in support of
nonmovant's position is insufficient to defeat the
motion; there must be evidence on which a jury could
reasonably find for the nonmovant. Anderson v. Liberty
Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505, 91
L.Ed.2d 202 (1986).

     If the movant demonstrates an absence of a genuine
issue of material fact, a limited burden of production
shifts to the nonmovant, who must "demonstrate more
than some metaphysical doubt as to the material facts,"
and come forward with "specific facts showing that
there is a genuine issue for trial." Aslanidis v.
United States Lines, Inc., 7 F.3d 1067, 1072 (2d Cir.
1993). If the non-movant fails to meet this burden,
summary judgment will be granted against it.

Powell v. Nat'l Bd. of Med. Exam'rs, 364 F.3d 79, 84 (2d Cir.

2004); accord Binder & Binder PC v. Barnhart, 481 F.3d 141, 148

(2d Cir. 2007); Jeffreys v. City of N.Y., 426 F.3d 549, 553-54

(2d Cir. 2005); Gallo v. Prudential Residential Servs., Ltd.

P'ship, 22 F.3d 1219, 1223-24 (2d Cir. 1994); see also McPherson

v. N.Y.C. Dep't of Educ., 457 F.3d 211, 215 n.4 (2d Cir. 2006)

("[S]peculation alone is insufficient to defeat a motion for

summary judgment.").

"In determining whether a genuine issue of material fact exists, a court must examine the evidence in the light most favorable to, and draw all inferences in favor of, the non-movant . . . . Stated more succinctly, '[t]he evidence of the non-movant is to be believed.'" Lucente v. Int'l Bus. Machs. Corp., 310 F.3d 243, 253-54 (2d Cir. 2002), quoting Anderson v. Liberty Lobby, Inc., supra, 477 U.S. at 255; accord Jeffreys v. City of New York, supra, 426 F.3d at 553 ("Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment.") (citation and internal quotations omitted); see also Make the Road by Walking, Inc. v. Turner, 378 F.3d 133, 142 (2d Cir. 2004); Dallas Aerospace, Inc. v. CIS Air Corp., 352 F.3d 775, 780 (2d Cir. 2003).

"Material facts are those which 'might affect the outcome of the suit under the governing law,' and a dispute is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Coppola v. Bear Stearns & Co., 499 F.3d 144, 148 (2d Cir. 2007), quoting Anderson v. Liberty Lobby, Inc., supra, 477 U.S. at 248; accord McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 202 (2d Cir. 2007). "'[I]n ruling on a motion for summary judgment, a judge must ask himself not whether he thinks the evidence unmistakably favors

15

one side or the other but whether a fair-minded jury could return a verdict for the [non-movant] on the evidence presented[.]'" Cine SK8, Inc. v. Town of Henrietta, 507 F.3d 778, 788 (2d Cir. 2007), quoting Readco, Inc. v. Marine Midland Bank, 81 F.3d 295, 298 (2d Cir. 1996).

B.  Constitutional
    Standing Requirements

The Constitutional standing requirements have been comprehensively set forth by the Honorable Kenneth M. Karas, United States District Judge, in Access 4 All, Inc. v. Trump Int'l Hotel and Tower Condo., 458 F. Supp. 2d 160, 167 (S.D.N.Y. 2006):

> Standing is an essential and unchanging component of the case-or-controversy requirement of Article III. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).  There are three well-settled constitutional standing requirements:  (1) injury in fact, which must be (a) concrete and particularized, and (b) actual or imminent; (2) a causal connection between the injury and the defendant's conduct; and (3) the injury must be likely to be redressed by a favorable decision.  See Field Day, LLC v. County of Suffolk, 463 F.3d 167, 175 (2d Cir. 2006) (citing Lujan, 504 U.S. at 560, 112 S.Ct. 2130).  A plaintiff's standing is evaluated at the time the complaint is filed.  See Robidoux v. Celani, 987 F.2d 931, 938 (2d Cir. 1993).  As the party invoking federal jurisdiction, Plaintiffs bear the burden of establishing standing.  See Field Day, 463 F.3d 167, 176.  To defeat a motion for summary judgment, Plaintiffs "must set forth by affidavit or other evidence specific facts which for purposes of the

16

summary judgment motion will be taken to be true."
Lewis v. Casey, 518 U.S. 343, 358, 116 S.Ct. 2174, 135
L.Ed.2d 606 (1996) (citing Lujan, 504 U.S. at 561, 112
S.Ct. 2130).  Each element must be proven with the
"manner and degree of evidence required" at the given
stage of litigation.  See Bldg. & Constr. Trades
Council v. Downtown Dev., Inc., 448 F.3d 138, 144 (2d
Cir. 2006).

A plaintiff cannot base standing merely on his status
as a taxpayer unless there are "special circumstances."  Ariz.
Christian Sch. Tuition Org. v. Winn, ___ U.S. ___, 131 S. Ct.
1436, 1442 (2011).  The United States Supreme Court "has rejected
the general proposition that an individual who has paid taxes has
a 'continuing, legally cognizable interest in ensuring that those
funds are not used by the Government in a way that violates the
Constitution.'"  Ariz. Christian Sch. Tuition Org. v. Winn,
supra, 131 S. Ct. at 1442, quoting Hein v. Freedom From Religion
Found., Inc., 551 U.S. 587, 599 (2007) (plurality opinion).

In Flast v. Cohen, 392 U.S. 83 (1968), the Supreme
Court carved out a "narrow exception" to the rule against
taxpayer standing.  Ariz. Christian Sch. Tuition Org. v. Winn,
supra, 131 S. Ct. at 1445, quoting Bowen v. Kendrick, 487 U.S.
589, 618 (1988).  Under Flast v. Cohen, supra, a taxpayer will
have standing when two conditions are met.  "The first condition
is that there must be a 'logical link' between the plaintiff's
taxpayer status 'and the type of legislative enactment

17

attacked.'"  _Ariz. Christian Sch. Tuition Org. v. Winn_, _supra_,
131 S. Ct. at 1445, _quoting_ _Flast v. Cohen_, _supra_, 392 U.S. at
102.  The other condition "is that there must be 'a nexus'
between the plaintiff's taxpayer status and 'the precise nature
of the constitutional infringement alleged.'"  _Ariz. Christian
Sch. Tuition Org. v. Winn_, _supra_, 131 S. Ct. at 1445, _quoting_
_Flast v. Cohen_, _supra_, 392 U.S. at 102.  A plaintiff's allegation
of taxpayer standing based on "an abstract injury shared by the
public" will not suffice, as "a concrete injury" is required.
_Bd. of Educ. v. N.Y. State Teachers Ret. Sys._, 60 F.3d 106, 110
(2d Cir. 1995) (citations omitted); _see also_ _Woods v. Empire
Health Choice, Inc._, 574 F.3d 92, 96 (2d Cir. 2009) ("Standing
has been rejected in [taxpayer standing] cases because the
alleged injury is . . . a grievance the taxpayer suffers in some
indefinite way in common with people generally." (_quoting_
_DaimlerChrysler Corp. v. Cuno_, 547 U.S. 332, 344 (2006) (internal
quotation marks omitted)).

    C.   Res Judicata and
         _Collateral Estoppel_

         The common law doctrines of _res_ _judicata_ and collateral
estoppel are "related but distinct [and] operate to prevent
parties from contesting matters that they have had a full and

fair opportunity to litigate, thereby conserving judicial resources and protecting parties from the expense and vexation of multiple lawsuits." Marvel Characters, Inc. v. Simon, 310 F.3d 280, 286 (2d Cir. 2002).  Federal law determines the preclusive effect of a federal judgment.  PRC Harris, Inc. v. Boeing Co., 700 F.2d 894, 896 n.1 (2d Cir. 1983).

"Res judicata [or claim preclusion][4] precludes parties from litigating issues 'that were or could have been raised' in a prior proceeding." Perez v. Danbury Hosp., 347 F.3d 419, 426 (2d Cir. 2003), quoting Monahan v. N.Y.C. Dep't of Corr., 214 F.3d 275, 284-85 (2d Cir. 2000); accord Irish Lesbian & Gay Org. v. Giuliani, 143 F.3d 638, 644 (2d Cir. 1998).  "To prove that a claim is precluded under this doctrine, 'a party must show that (1) the previous action involved an adjudication on the merits; (2) the previous action involved the [parties] or those in privity with them; [and] (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action.'" Pike v. Freeman, 266 F.3d 78, 91 (2d Cir. 2001), quoting Monahan v. N.Y.C. Dep't of Corr., supra, 214 F.3d at 284-85; see also Allen v. McCurry, supra, 449 U.S. at 94; Burgos v.

---

[4]Some more modern authorities refer to the doctrines of res judicata and collateral estoppel by the more descriptive terms of claim preclusion and issue preclusion, respectively.  See Allen v. McCurry, 449 U.S. 90, 94 n.5 (1980).

Hopkins, 14 F.3d 787, 789 (2d Cir. 1994); Chase Manhattan Bank, N.A. v. Celotex Corp., 56 F.3d 343, 345-46 (2d Cir. 1995); Henik v. Labranche, 433 F. Supp. 2d 372, 378 (S.D.N.Y. 2006) (Sweet, D.J.); Word v. Croce, 230 F. Supp. 2d 504, 508-09 (S.D.N.Y. 2002) (Swain, D.J.).

"Collateral estoppel, or issue preclusion, prevents parties or their privies from relitigating in a subsequent action an issue of fact or law that was fully and fairly litigated in a prior proceeding." Marvel Characters, Inc. v. Simon, supra, 310 F.3d at 288; see Boguslavsky v. Kaplan, 159 F.3d 715, 719-20 (2d Cir. 1998); see also Comm'r of Internal Revenue v. Sunnen, 333 U.S. 591, 598 (1948) ("Once a party has fought out a matter in litigation with the other party, he cannot later renew that duel."). To assert a defense of collateral estoppel successfully, a party must establish four elements: "'(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits.'" Ball v. A.O. Smith Corp., 451 F.3d 66, 69 (2d Cir. 2006), quoting Purdy v. Zeldes, 337 F.3d 253, 258 & n.5 (2d Cir. 2003); accord Uzdavines v. Weeks Marine, Inc., 418 F.3d 138, 146 (2d Cir.

20

2005); <u>Marvel Characters, Inc. v. Simon</u>, <u>supra</u>, 310 F.3d at 288-89.  However, collateral estoppel will not be applied where it would lead to an unfair result.  <u>Parklane Hosiery Co. v. Shore</u>, 439 U.S. 322, 330-31 (1979) (application of collateral estoppel may be unfair where prior litigations have yielded inconsistent results); <u>Bear, Stearns & Co. v. 1109850 Ontario, Inc.</u>, 409 F.3d 87, 91 (2d Cir. 2005) (same).

The granting of a motion to dismiss on substantive grounds is considered a judgment on the merits.  <u>See</u> <u>Overview Books, LLC v. United States</u>, 755 F. Supp. 2d 409, 415-16 (E.D.N.Y. Dec. 13, 2010), <u>quoting</u> <u>Ramirez v. Brooklyn Aids Task Force</u>, 175 F.R.D. 423, 426 (E.D.N.Y. 1997) ("It is well-established that '[f]or <u>res judicata</u> purposes, a Rule 12(b)(6) dismissal is deemed to be a judgment on the merits.'").  However, the preclusive effect of a dismissal for lack of standing is not as clear in the Second Circuit.

A dismissal for lack of standing "is a dismissal for lack of subject matter jurisdiction."  <u>St. Pierre v. Dyer</u>, 208 F.3d 394, 400 (2d Cir. 2000) (citations omitted).  Courts in the Second Circuit have held that "a dismissal for lack of subject matter jurisdiction is not an adjudication of the merits, and hence has no res judicata effect."  <u>St. Pierre v. Dyer</u>, <u>supra</u>, 208 F.3d at 400; <u>Thompson v. Cnty. of Franklin</u>, 15 F.3d 245, 253

(2d Cir. 1994), <u>citing</u> <u>Exchange Nat'l Bank of Chicago v. Touche</u> <u>Ross & Co.</u>, 544 F.2d 1126, 1130-31 (2d Cir. 1976); <u>Fiero v. Fin.</u> <u>Indus. Regulatory Auth., Inc.</u>, 606 F. Supp. 2d 500, 510 (S.D.N.Y. 2009) (Marrero, D.J.).  However, courts in this Circuit have also held that determinations of standing and other jurisdictional issues do give rise to binding <u>res</u> <u>judicata</u> consequences.  <u>Mrazek</u> <u>v. Suffolk Cnty. Bd. of Elections</u>, 630 F.2d 890, 896 n.10 (2d Cir. 1980) ("We note only that the issue of [plaintiffs'] standing, by all accounts, has been determined adversely to them in the state courts and that decision is binding upon us under principles of res judicata" (citation omitted); <u>Ripperger v. A.C.</u> <u>Allyn & Co.</u>, 113 F.2d 332, 333-34 (2d Cir. 1940) ("The appellant concedes, as he necessarily must on the authorities, that a decision in favor of jurisdiction is res judicata and invulnerable to collateral attack" (citations omitted)); <u>Barclay's Ice Cream Co., Ltd. v. Local No. 757 of Ice Cream</u> <u>Drivers and Emp'rs Union</u>, 79 Civ. 1611 (RWS), 1979 WL 1710 at *2 (S.D.N.Y. Sept. 7, 1979) (Sweet, D.J.) ("[A] finding of lack of subject matter jurisdiction is <u>res</u> <u>judicata</u> as to that particular issue in subsequent actions between the parties."); <u>Loucke v.</u> <u>United States</u>, 21 F.R.D. 305, 309-10 (S.D.N.Y. 1957) (Herlands, D.J.) ("[A] decision on the issue of jurisdiction or venue is <u>res</u> <u>judicata</u> with respect to those issues.").

While these authorities appear to be conflicting, the ambiguous use of the term "res judicata" may be one reason for the apparently inconsistent holdings.

> [T]he term 'res judicata' has historically been used interchangeably to mean either res judicata (also known as claim preclusion) or collateral estoppel (also known as issue preclusion), see Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 77 n. 1, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984) (noting the older practice of using res judicata to describe both res judicata and collateral estoppel, and noting a more recent tendency to apply the label of res judicata only to matters of claim preclusion) . . . .

Wells Fargo Bank, N.A. v. Diamond Point Plaza Ltd. P'ship, 971 A.2d 360, 365 (Md. Ct. Spec. App. 2009).  In any event, the weight of authority outside of this Circuit holds that a dismissal for lack of standing collaterally estops subsequent suits which present the precise standing issue that was actually determined.  Brereton v. Bountiful City Corp., 434 F.3d 1213, 1218-19 (10th Cir. 2006); Ammex, Inc. v. United States, 384 F.3d 1368, 1372 (Fed. Cir. 2004); In re V & M Mgmt., Inc., 321 F.3d 6, 8-9 (1st Cir. 2003); Harley v. Minn. Mining & Mfg. Co., 284 F.3d 901, 909 (8th Cir. 2002); Hooker v. Federal Election Comm'n, 21 F. App'x 402, 405-06 (6th Cir. 2001) (per curiam); Dresser v. Backus, 229 F.3d 1142, 2000 WL 1086852 at *1 (4th Cir. Aug. 4, 2000) (unpublished) (per curiam); Perry v. Sheahan, 222 F.3d 309, 317-18 (7th Cir. 2000); Cutler v. Hayes, 818 F.2d 879, 889 (D.C.

Cir. 1987).  <u>See also People of Bikini, ex rel. Kili/Bikini/Ejit Local Gov. Council v. United States</u>, 77 Fed. Cl. 744, 776 (Fed. Cl. 2007) ("Dismissal of a suit for want of federal subject-matter jurisdiction, for example, should not bar an action on the same claim in a court that does have subject matter jurisdiction, but <u>ordinarily should preclude relitigation of the same issue of subject-matter jurisdiction in a second federal suit on the same claim</u>." (<u>quoting</u> 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, <u>Federal Practice & Procedure</u> § 4402 at 20 (2d ed. 2007) (emphasis added)).

"It is clear that a dismissal for want of jurisdiction does not preclude a second action where subsequent events cure the jurisdictional deficiency in the first suit." <u>Bui v. IBP, Inc.</u>, 205 F. Supp. 2d 1181, 1188 (D. Kan. 2002), <u>citing Costello v. United States</u>, 365 U.S. 265, 284-88 (1961); <u>Perry v. Sheahan</u>, <u>supra</u>, 222 F.3d at 318; <u>Dozier v. Ford Motor Co.</u>, 702 F.2d 1189, 1192 (D.C. Cir. 1983) (Scalia, Cir. J.).  However, a number of Circuits have held that, following a dismissal for lack of standing, a plaintiff is collaterally estopped from relitigating the standing issue with facts that were available to him at the time of the first action.  <u>In re V & M Mgmt., Inc.</u>, <u>supra</u>, 321 F.3d at 8-9 (affirming bankruptcy court's dismissal of claims of fraud, professional malpractice and breach of fiduciary duty on

issue preclusion grounds and holding that an appellant's "allegations could have been raised in the prior bankruptcy proceedings where [his] standing was adjudicated"); Dresser v. Backus, supra, 2000 WL 1086852 at *1 (rejecting appellant's contention that a prior action presented "different issues than the case at bar" where the prior action addressed his standing to bring state law tort claims and the case at bar only raised the issue of his standing to pursue RICO claims, concluding that the two actions "clearly involve common factual issues"); Perry v. Sheahan, supra, 222 F.3d at 317-18 (dismissing Section 1983 action).[5]   See also Hooker v. Federal Election Comm'n, 21 F. App'x

_____

[5]Other Circuits have held that a party is collaterally estopped from relitigating other jurisdictional issues with facts that were available at the time of the first action.  Citizens Elecs. Co. v. OSRAM GmBH, 225 F. App'x 890, 893 (Fed. Cir. 2007) ("[A] plaintiff cannot relitigate a jurisdictional dismissal [for failure to plead an actual controversy] by relying upon those facts that existed at the time of the first dismissal" (citations omitted)); Park Lake Res. Ltd. Liab. v. U.S. Dep't Of Agric., 378 F.3d 1132, 1137 (10th Cir. 2004) (affirming dismissal on issue preclusion grounds following prior action's dismissal on the grounds that claim was not ripe and holding that "[w]e do not think that these additional factual allegations should preclude the operation of res judicata when these facts were available to [the plaintiff] at the time it filed its complaint in [the prior litigation],") quoting Magnus Elecs., Inc. v. La Republica Argentina, 830 F.2d 1396, 1401 (7th Cir. 1987); Dozier v. Ford Motor Co., supra, 702 F.2d at 1192 & n.4 (affirming dismissal on res judicata grounds following prior suit's dismissal for inadequate amount-in-controversy and concluding that "proper application of res judicata should require some demonstration that the plaintiff is relying upon a new fact or occurrence, and

(continued...)

at 405-06 ("In sum, issue preclusion applies in the present case, because the plaintiff is attempting to reassert the same claim with unchanged facts supporting his standing.  Federal courts have used preclusion to bar litigants who had been found to lack standing in a prior suit from reasserting the same claim in a subsequent suit if the facts presented by the litigants to support standing had not changed." (citations omitted)).

In <u>Perry v. Sheahan</u>, <u>supra</u>, 222 F.3d at 317-18, the Seventh Circuit affirmed the dismissal of a Section 1983 action on the grounds of issue preclusion where a prior action had been dismissed for lack of standing.  There, the plaintiff "conceded at oral argument that the factual allegations included in <u>Perry II</u> did not represent a change in circumstances between <u>Perry I</u> and <u>Perry II</u>.  Instead, they were facts known when <u>Perry I</u> was brought, but that were never included in the complaint."  <u>Perry v. Sheahan</u>, <u>supra</u>, 222 F.3d at 318.

The Court stressed that

> [u]nder a system such as that established by the Federal Rules of Civil Procedure, which permits liberal amendment of pleadings, it does not make sense to allow

(...continued)
not merely relying upon those that existed at the time of the first dismissal.").  <u>See</u> <u>also</u> <u>DaCosta v. United States</u>, No. 09-558 T, 2010 WL 537572 at *5-*6 (Fed. Cl. Feb. 16, 2010) ("[T]he newly alleged facts must have arisen <u>after</u> the court's dismissal of the first complaint." (citation omitted)).

26

> a plaintiff to begin the same suit over and over again in the same court, each time alleging additional facts that the plaintiff was aware of from the beginning of the suit, until it finally satisfies the jurisdictional requirements.

Perry v. Sheahan, supra, 222 F.3d at 318, quoting Magnus Elecs., Inc. v. La Republica Argentina, supra, 830 F.2d at 1401.

D.  Application of the Foregoing
    Principles to the Present Case

Judged by the standards set forth above, I conclude that summary judgment should be granted dismissing Hollander's claims for lack of subject matter jurisdiction.  I need not address the dubious merits of his claims, because I conclude -- based on the weight of authority discussed above -- that his action is barred on the grounds of collateral estoppel.  The Underlying Action was dismissed for lack of standing (see Report and Recommendation in Hollander v. Inst. for Research on Women & Gender at Columbia University, 08 Civ. 7286 (Docket Item 33); Order in Hollander v. Inst. for Research on Women & Gender at Columbia University, 08 Civ. 7286 (Docket Item 36); Hollander v. Inst. for Research on Women & Gender at Columbia Univ., supra, 372 F. App'x 140, 2010 WL 1508269 at *1), an issue that Hollander attempts to relitigate here.

27

As discussed in Section III.C., defendants must establish collateral estoppel through a four-part test, showing that "'(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits.'"  Ball v. A.O. Smith Corp., supra, 451 F.3d at 69, quoting Purdy v. Zeldes, supra, 337 F.3d at 258 & n.5.

Hollander's Establishment Clause claims are identical to those raised in the Underlying Action, with one distinction: in his complaint here, Hollander has expressly alleged his standing as a taxpayer as an alternative basis for standing. However, when Hollander appealed the Underlying Action to the Second Circuit, he raised the issue of taxpayer standing.  At oral argument, the Second Circuit discussed this issue at length with Hollander and defendants.  Although Hollander conceded there that he never expressly alleged taxpayer standing in the complaint in the Underlying Action, he argued that this basis of standing should have been implied.  The Court of Appeals rejected Hollander's assertion of taxpayer standing, holding that Hollander had not "made out the requirements for taxpayer standing for his Establishment Clause claim."  Hollander v. Inst.

for Research on Women & Gender at Columbia Univ., supra, 372 F.
App'x 140, 2010 WL 1508269 at *1.  The foregoing demonstrates
that the issue of taxpayer standing was raised previously and was
actually litigated and decided.  Hollander had a full and fair
opportunity to litigate the taxpayer standing issue, and the
resolution of this issue was necessary to a valid and final
judgment on the issue of standing.  Although not technically "on
the merits," the Second Circuit's judgment has preclusive effect
with respect to the specific issue of standing.  Mrazek v.
Suffolk Cnty. Bd. of Elections, supra, 630 F.2d at 896 n.10
(citation omitted).  See also Brereton v. Bountiful City Corp.,
supra, 434 F.3d at 1218-19; Ammex, Inc. v. United States, supra,
384 F.3d at 1372; In re V & M Mgmt., Inc., supra, 321 F.3d at 8-
9; Harley v. Minn. Mining & Mfg. Co., supra, 284 F.3d at 909;
Hooker v. Federal Election Comm'n, supra, 21 F. App'x at 405-06;
Dresser v. Backus, supra, 229 F.3d 1142, 2000 WL 1086852 at *1;
Perry v. Sheahan, supra, 222 F.3d at 317-18; Cutler v. Hayes,
supra, 818 F.2d at 889.

Hollander's pleading of facts that were previously
available at the time of the Underlying Action does not defeat
collateral estoppel.  Hollander puts forth no evidence that his
taxpayer standing is a new development that has occurred
subsequent to the dismissal of the Underlying Action.  On the

29

contrary, he claimed during his appeal of the Underlying Action that he had taxpayer standing, and he is merely claiming to allege a jurisdictional fact here that he omitted from his prior complaint (Pl.'s Mem. at 7).  As the weight of authority shows, a plaintiff is collaterally estopped from relitigating the standing issue with facts that were available to him at the time of the first action.  In re V & M Mgmt., Inc., supra, 321 F.3d at 8-9; Dresser v. Backus, supra, 2000 WL 1086852 at *1; Perry v. Sheahan, supra, 222 F.3d at 317-18.

         Hollander's subsequent submission of pay stubs from 2010 and 2011, which indicate New York State and federal tax withholdings, does not change the foregoing analysis.  Hollander submitted this evidence in his declaration in opposition to the motions to dismiss, after he filed his complaint.  In the Second Circuit, a plaintiff's standing is evaluated "at the time the complaint was filed."  Robidoux v. Celani, supra, 987 F.2d at 938.  Even if I were to ignore this rule, Hollander asserted that he was a New York State and federal taxpayer at the time of the first action, as already discussed above.  Therefore, these subsequent pay stubs do not constitute a "change in circumstances" with respect to Hollander's taxpayer standing. Perry v. Sheahan, supra, 222 F.3d at 318.  Hollander is not alleging that he only became a New York State or federal taxpayer

following the dismissal of the Underlying Action.  He could have pleaded similar facts at the time of the first complaint, albeit with pay stubs from previous years.

Hollander argues that a "failure to allege a jurisdictional fact will not prevent a subsequent action in which the jurisdictional fact is alleged" (Pl.'s Mem. at 6 (citation omitted)).  But the cases he cites in support of his position do not change the foregoing analysis (see Pl.'s Mem. at 5-6).  He cites Smith v. McNeal, 109 U.S. 426, 431 (1883), for the proposition that a failure to allege a jurisdictional prerequisite is no bar where the defect was cured in a subsequent pleading.  However, in Dozier v. Ford Motor Co., supra, 702 F.2d at 1192-93, the D.C. Circuit concluded that Smith v. McNeal, supra, and similar cases that suggested that "any 'defect in pleading' may be remedied" should be regarded as "superseded, expressing a rule that made sense only in a system where liberal amendment of pleading was not permitted."  The Court of Appeals further noted that Smith v. McNeal had "not been cited by the Supreme Court in the century since its issuance." Dozier v. Ford Motor Co., supra, 702 F.2d at 1193.  This analysis is consistent with the holdings from other Circuits, already discussed above, limiting relitigation of jurisdictional defects to situations where new facts arise subsequent to a prior action's dismissal.

31

Next, Hollander cites Ripperger v. A.C. Allyn & Co., supra, 113 F.2d at 333-34, for the proposition that failure to allege a jurisdictional fact will not prevent a subsequent action in which the jurisdictional fact is alleged.  I conclude the holding in this case actually undercuts his position.  As already noted above, the Second Circuit stated in Ripperger v. A.C. Allyn & Co., supra, 113 F.2d at 333 "that a decision in favor of jurisdiction is res judicata and invulnerable to collateral attack" (citations omitted).  While the Second Circuit cites Smith v. McNeal, supra, in Ripperger, it distinguishes the case. Ripperger involved an action against two out-of-state corporations for conspiracy to use corporate assets for private profit, and a prior action had been dismissed for improper venue. In the second action, the plaintiff appealed a district court dismissal on the grounds of res judicata.  113 F.2d at 332-33. In the second action, the plaintiff alleged that the corporations had designated agents for service of process in New York, a fact that existed prior to the dismissal of the first action.  113 F.2d at 333.  The Second Circuit held that because the designation of the agents "antedated the first suit," there was "no change in the facts upon which the venue privilege depends." 113 F.2d at 334.  The Court of Appeals concluded that the legal effect of the designation of agents "was a question necessarily

involved in the controversy presented by the motions to dismiss the first complaint" and that appellant could have proved the fact of the designations by affidavit at that time.  113 F.2d at 334.  Thus, the prior dismissal for improper venue was "a conclusive determination of that issue between the parties."  113 F.2d at 334.  This holding is entirely consistent with the aforementioned cases that hold that jurisdictional defects can only be cured with new facts that post-date the prior action's dismissal.  Therefore, I conclude that this holding actually supports defendants' position.

Next, Hollander cites a footnote in <u>York v. Guaranty Tr. Co. of N.Y.</u>, 143 F.2d 503, 519 n.21 (2d Cir. 1944), <u>rev'd</u> <u>on</u> <u>other</u> <u>grounds</u>, 326 U.S. 99 (1945), which states:

> As appears from Ripperger v. A. C. Allyn & Co., 2 Cir.,
> 113 F.2d 332, and Smith v. McNeal, 100 U.S. 426, 3
> S.Ct. 319, 27 L.Ed. 986, a prior decision dismissing a
> suit on the mere pleadings for lack of jurisdiction is
> not a bar to a second suit alleging sufficient
> jurisdictional facts which existed when the first suit
> was pending but which were not therein alleged. Cf.
> Wiggins Ferry Co. v. Ohio & M.R. Co., 142 U.S. 396,
> 410, 2 S.Ct. 188, 35 L.Ed. 1055; Sylvan Beach v. Koch,
> 8 Cir., 140 F.2d 852, 860; Dennison Mfg. Co. v. Scharf
> Tag, Label & Box Co., 6 Cir., 121 F. 313, 318.

I conclude that this footnote is not controlling authority, but rather dicta.  "Dictum generally refers to an observation which appears in the opinion of a court which was unnecessary to the disposition of the case before it."  <u>Hormel</u>

Foods Corp. v. Jim Henson Productions, Inc., 73 F.3d 497, 508 (2d
Cir. 1996) (citations and internal quotation marks omitted).
"Dicta of course have no precedential value."  Beneficial Nat'l
Bank v. Anderson, 539 U.S. 1, 17 (2003) (citation omitted).  The
footnote qualifies as an observation which was unnecessary to the
disposition of that case.  The United States Supreme Court,
before reversing York v. Guaranty Tr. Co. of N.Y., supra, on
other grounds, stated that the Second Circuit's holding was that
"in a suit brought on the equity side of a federal district
court[,] that court is not required to apply the State statute of
limitations that would govern like suits in the courts of a State
where the federal court is sitting even though the exclusive
basis of federal jurisdiction is diversity of citizenship."
Guaranty Tr. Co. of N.Y. v. York, supra, 326 U.S. at 101.

        Additionally, I have not found any subsequent case
citing the footnote in York.  Moreover, as already discussed, the
cases relied upon in the York footnote are of questionable help
to Hollander.  The Ripperger appellant was unable to avoid res
judicata because his only purportedly new allegation with respect
to venue "antedated the first suit."  Ripperger v. A.C. Allyn &
Co., supra, 113 F.2d at 334.  And at least one Circuit regards
Smith v. McNeal, supra, as superceded.  See Dozier v. Ford Motor
Co., supra, 702 F.2d at 1192-93.

Finally, the overwhelming majority of Circuits that
have addressed this issue since York have concluded that a
plaintiff is collaterally estopped from relitigating a
jurisdictional defect -- including standing -- with facts that
were available to him at the time of the first action. Citizens
Elecs. Co. v. OSRAM GmBH, supra, 225 F. App'x at 893; Park Lake
Res. Ltd. Liab. v. U.S. Dep't Of Agric., supra, 378 F.3d at 1137;
In re V & M Mgmt., Inc., supra, 321 F.3d at 8-9; Dresser v.
Backus, supra, 229 F.3d 1142, 2000 WL 1086852 at *1; Perry v.
Sheahan, supra, 222 F.3d at 317-18; Dozier v. Ford Motor Co.,
supra, 702 F.2d at 1192 & n.4.[6]  For these reasons, I decline to

---

[6]It appears that only one Circuit has held that a
jurisdictional defect may be cured by restating facts which
existed prior to dismissal of the initial case.  In Mann v.
Merrill Lynch, Pierce, Fenner & Smith, 488 F.2d 75, 76 (5th Cir.
1973) (per curiam), the district court dismissed a complaint
"alleging wrongs sounding in contract" for failure to properly
allege diversity jurisdiction.  The Fifth Circuit held that this
dismissal did not preclude a new suit where allegations of
diversity jurisdiction were properly pled, as the original suit
was dismissed "basically because requisite jurisdictional
allegations were missing."  Mann v. Merrill Lynch, Pierce, Fenner
& Smith, supra, 488 F.2d at 76.  Two Circuits have subsequently
examined the holding in Mann and declined to adopt its reasoning.
Dozier v. Ford Motor Co., supra, 702 F.2d at 1193 n.7 (concluding
that the requirement of a showing that facts occurred subsequent
to the original dismissal in order to cure a jurisdictional
defect "makes more sense"); Magnus Elecs., Inc. v. La Republica
Argentina, supra, 830 F.2d at 1401 (comparing Dozier and Mann and
concluding that "Dozier [was] the better reasoned result").  See
also 18 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper,
Federal Practice & Procedure § 4436 at 159 n.18 (2d ed. 2007)
(continued...)

adopt the reasoning from this footnote.  Thus, Hollander's taxpayer standing argument fails.

In addition to his taxpayer standing argument, Hollander also alleges non-economic standing -- which he previously alleged in the Underlying Action Complaint.  This ground for standing was previously litigated and decided in the Underlying Action by Judge Kaplan, who adopted Judge Fox's Report and Recommendation and dismissed for lack of standing.  Judge Fox held that there was no "injury in fact" since the plaintiffs there were neither enrolled in the Women's Studies program nor denied an opportunity to enroll, and he also held that any alleged injury stemming from the absence of a Men's Studies program was not concrete and particularized (Report and Recommendation at 8-9).  The Second Circuit affirmed the dismissal "for substantially the reasons stated in Judge Fox's thorough Report and Recommendation as adopted by the district court."  <u>Hollander v. Inst. for Research on Women & Gender at Columbia Univ.</u>, <u>supra</u>, 372 F. App'x 140, 2010 WL 1508269 at *1. Hollander had a full and fair opportunity to litigate the non-economic standing issue, and the resolution of this issue was

---

[6](...continued)
("The treatment of the problem in the Mann case is not so thorough that it can be relied upon as the final word.").

also necessary to a valid and final judgment on the issue of standing.  As already discussed, a judgment on the issue of standing has preclusive effect with respect to that issue.

Therefore, I conclude that plaintiff's lack of standing is established by the judgment in the Underlying Action and that the doctrine of collateral estoppel precludes plaintiff from relitigating the issue here.  Because I reach this conclusion, I need not address the other arguments Hollander raised in his opposition memo with respect to the plausibility standard of pleading.  There are no genuine issues of material fact, and defendants are entitled to summary judgment as a matter of law.

IV.  Conclusion

Accordingly, for all the foregoing reasons, I respectfully recommend that defendants' motions for summary judgment be granted.

V.  Objections

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from receipt of this Report to file written objections.  See also Fed. R. Civ. P. 6(a).  Such objections (and responses thereto) shall be filed with the Clerk of the Court,

37

with courtesy copies delivered to the Chambers of the Honorable

Laura Taylor Swain, United States District Judge, 500 Pearl

Street, Room 755, and to the Chambers of the undersigned, 500

Pearl Street, Room 750, New York, New York 10007.  Any requests

for an extension of time for filing objections must be directed

to Judge Swain.  FAILURE TO OBJECT WITHIN FOURTEEN (14) DAYS **WILL**

RESULT IN A WAIVER OF OBJECTIONS AND **WILL** PRECLUDE APPELLATE

REVIEW.  Thomas v. Arn, 474 U.S. 140, 155 (1985); United States

v. Male Juvenile, 121 F.3d 34, 38 (2d Cir. 1997); IUE AFL-CIO

Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993); Frank

v. Johnson, 968 F.2d 298, 300 (2d Cir. 1992); Wesolek v. Canadair

Ltd., 838 F.2d 55, 57-59 (2d Cir. 1988); McCarthy v. Manson, 714

F.2d 234, 237-38 (2d Cir. 1983) (per curiam).

Dated:  New York, New York
        July 1, 2011

                              Respectfully submitted,


                              HENRY PITMAN
                              United States Magistrate Judge


Copies transmitted to:

Mr. Roy D. Hollander, Esq.
Law Office of Roy D. Hollander
545 East 14th Street
New York, New York  10009

Clement J. Colucci III, Esq.
Assistant Attorney General
New York State Department of Law
24th Floor
120 Broadway
New York, New York  10271

Jean-David Barnea, Esq.
United States Attorney's Office
Southern District of New York
3rd Floor
86 Chambers Street
New York, New York  10007