UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------------------x
Roy Den Hollander,                                                    Docket No.
                                                                     10 CV 9277
            Plaintiff on behalf of himself and all others            (LTS)(HBP)(ECF)
            similarly situated,

                        -against-

Members of the Board of Regents of the University of the State of
        New York, in their official and individual capacities;
Chancellor of the Board of Regents, Merryl H. Tisch, in her official
        and individual capacity;
New York State Commissioner of the Department of Education,
        David M. Steiner, in his official and individual capacity;
Acting President of the New York State Higher Education Services
        Corp., Elsa Magee, in her official and individual capacity;
U.S. Department of Education; and
U.S. Secretary of Education, Arne Duncan, in his official capacity;

            Defendants.
-----------------------------------------------------------------------------------x


**OBJECTIONS TO MAGISTRATE JUDGE HENRY B. PITMAN'S REPORT AND
RECOMMENDATIONS**


                                        Roy Den Hollander, Esq. (1957)
                                        Plaintiff class attorney and representative
                                        545 East 14 Street, 10D
                                        New York, N.Y. 10009
                                        (917) 687-0652

# TABLE OF CONTENTS

**Page**

General Objections to the Magistrate's Report and Recommendation.........................1

Specific Objections to the Magistrate's Report and Recommendation.....................…..7

    Magistrate Pitman's Factual Inaccuracies.………………………………………8

    Magistrate Pitman's lack of a decision over res judicata…………………………..9

    Magistrate Pitman erred in holding that collateral estoppel,
    or issue preclusion, applies to the Establishment Clause
    issue of taxpayer standing………………………………………………….…10

    Even if collateral estoppel applies to the taxpayer standing issue,
    it does not apply to the non-economic standing issue unless
    the false facts presented by Magistrate Pitman on this issue
    are ordained as true……………………………………………………………14

    Magistrate Pitman inappropriately relies on cases outside
    the Second Circuit to override the authority of Second Circuit
    and U.S. Supreme Court precedence on the issue of
    collateral estoppel, also known as issue preclusion………………………………16

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Ammex, Inc. v. United States*, 384 F.3d 1368 (Fed. Cir. 2004)…………………….…17

*Anti-Fascist Committee v. McGarth*, 341 U.S. 123 (1951)……………………..……3, 7

*Balderman v. United States Veterans Admin.*, 870 F.2d 57 (2d Cir. 1989)………..….11

*Ball v. A.O. Smith Corp.,* 451 F.3d 66 (2d Cir. 2006)……………………………...14, 19

*Bear, Stearns & Co. v. 1109580 Ont., Inc.*, 409 F.3d 87 (2d Cir. 2005)…………...…19

*Bobby v. Bies*, 129 S. Ct. 2145 (2009)…………………………………………………12

*Boguslavsky v. Kaplan*, 159 F.3d 715 (2d Cir. 1998)…………………………….…18

*Brereton v. Bountiful City Corp.*, 434 F.3d 1213 (10th Cir. 2006)………………...17

*Bui v. IBP, Inc.*, 205 F. Supp. 2d 1181 (D. Kansas 2002)……………………….....18

*Citizen Elecs. Co. v. Osram GmbH*, 225 Fed. App'x. 890 (Fed. Cir. 2007)………..….18

*Comm'r of Internal Revenue v. Sunnen*, 333 U.S. 591 (1948)………………….....19

*County of Suffolk v. Amerada Hess Corp.*, 2007 U.S. Dist. LEXIS 45543
(S.D.N.Y. 2007)…………………………………………………………………..…..13

*Cutler v. Hayes*, 818 F.2d 879 (D.C. Cir. 1987)……………………………………...17

*DaCosta v. United States*, No. 09-558 T, 2010 WL 537572 (Fed. Cl. 2010)………...…19

*Dennison Mfg. Co. v. Scharf Tag, Label & Box Co.*, 121 F. 313 (6th Cir. 1903…….23, 25

*Dozier v. Ford Motor Co.*, 702 F.2d 1189 (D.C. Cir. 1983)……………….…….18, 20

*Dresser v. Backus*, 229 F.3d 1142, 2000 WL 1086852 (4th Cir. 2000)………….…...17

*EDP Med. Computer Sys. v. U.S.*, 480 F.3d 621 (2d Cir. 2007)………………..…….9

*Evac, LLC v. Pataki*, 89 F. Supp. 2d 250 (N.D.N.Y. 2000)………………….…….9

*Gelb v. Royal Globe Insurance Co.*, 798 F.2d 38 (2d Cir. 1986)……………..…….13

*Hanna v. Plumer*, 380 U.S. 460 (1965)……………………………………………………..20

*Harley v. Minnesota Mining and Manufacturing Co.*, 284 F.3d 901 (8th Cir. 2002)...17, 25

*Hooker v. F.E.C.*, 21 Fed. App'x. 402 (6th Cir. 2001)………………………..….17, 25

*Hughes v. U.S.*, 71 U.S. 232 (1866)……………………………………………………..…9

*In re Soya Products Co.*, 112 F. Supp. 94 (S.D.N.Y. 1993)…………………..……23

*In re V & M Mgmt.*, Inc., 321 F.3d 6 (1st Cir. 2003)……………………………..……19

*Kendall v. Overseas Dev. Corp.*, 700 F.2d 536 (9th Cir. 1983)………………………..21

*Johnson v. Boyd-Richardson Co.*, 650 F.2d 147 (8th Cir. 1981)………………………...24

*Josephson's Nat'l Bar Review Centers, Inc. v. Nexus Corp.*, 359 F. Supp. 1144 (N.D. Ill. 1973)…………………………………………………………..…22

*Lawlor v. National Screen Service*, 349 U.S. 322 (1955)………………………………..11

*Local 538 United Bhd. of Carpenters & Joiners v. U.S. Fid. & Guar. Co.*, 154 F.3d 52 (2d Cir. 1998)……………………………………………………….……10

*Lowe v. U.S.*, 79 Fed. Cl. 218 (Fed. Ct. Cl. 2007)……………………..….20, 23, 25

*Magnus Electronics, Inc. v. La Republica Argentina*, 830 F.2d 1396 (7th Cir. 1987)…..18

*Mann v. Merrill Lynch, Pierce, Fenner & Smith*, 488 F.2d 75 (5th Cir. 1973)……..…..24

*Marvel Characters v. Simon*, 310 F.3d 280 (2d Cir. 2002)………………………..…….18

*McCoy v. Mass. Inst. of Tech.*, 950 F.2d 13 (1st Cir. 1991), *cert. denied*, 504 U.S. 910 (1992)……………………………………………….……..12, 13

*Mitchell v. Humana Hosp.-Shoals*, 942 F.2d 1581 (11th Cir. 1991)………………..……11

*Mrazek v. Suffolk County Board of Elections*, 630 F.2d 890 (2d Cir. 1980)………...13, 19

*Panaview Door & Window Co. v. Van Ness*, 135 F. Supp. 253 (D. Cal. 1955)……..…. 22

*Park Lake Res. Ltd. Liab. Co. v. USDA*, 378 F.3d 1132 (10th Cir. 2004)…………..……18

*Parklane Hosiery Co. v. Shore*, 439 U.S. 322 (1979)…………………………..…..……19

*People of Bikini v. United States*, 77 Fed. Cl. 744 (Fed. Cl. Ct. 2007)……………..…...17

*Perry v. Sheahan*, 222 F.3d 309 (7th Cir. 2000)……………………………………………19

*Purdy v. Zeldes*, 337 F.3d 253 (2d Cir. 2003)………………………………………..14, 19

*Ripperger v. A. C. Allyn & Co.*, 113 F.2d 332 (2d Cir. 1940),
*cert. denied*, 311 U.S. 695…………………………………………………19, 20, 21, 22, 24

*Securities Exch. Comm'n v. Monarch Funding Corp.*, 192 F.3d 295 (2d Cir. 1999)…......11

*Smith v. McNeal*, 109 U.S. 426 (1883)…………………………………..19, 20, 21, 22, 24

*Steele v. Guaranty Trust Co.*, 164 F.2d 387 (2d Cir, 1947)……………………………....23

*Sylvan Beach v. Koch*, 140 F.2d 852 (8th Cir. 1944)………………………….....…..23, 25

*Teltronics Servs., Inc.*, 762 F.2d 185 (2d Cir. 1985)……………………………………9

*Thomas v. County of Franklin*, 15 F.3d 245 (2d Cir. 1994)………………………...……...9

*Trujillo v. Colorado*, 649 F.2d 823 (10th Cir. 1981)……………………………...……24

*U.S. ex rel. Rudick v. Laird*, 412 F.2d 16 (2d Cir. 1969)………………………….....…10

*U.S. v. Hays*, 515 U.S. 737 (1995)………………………………………………..……9

*Uzdavines v. Weeks Marine, Inc.*, 418 F.3d 138 (2d Cir. 2005)………………………….19

*Wiggins Ferry Co. v. Ohio & M.R. Co.*, 142 U.S. 396 (1892)………………………..23, 24

*Yick Wo v. Hopkins*, 118 U.S. 356 (1886)……………………………………………………3

*York v. Guaranty Trust Co.*, 143 F.2d 503 (1944),
*overruled on other grounds*, 326 U.S. 99……………………………………20, 22, 23, 25

*Younger v. Harris*, 401 U.S. 37 (1971)……………………………………………….....7

**Rules**

Fed. R. Civ. P.  12(b)(1)………………………………………………………………...5

Fed. R. Civ. P.  12(b)(6)………………………………………………………………....5

Fed. R. Civ. P. 72(b)……………………………………………………………….…1

N.Y. Educ. Law § 207……………………………………………………………………5

**Other**

*Bluebook, A Uniform System of Citation*, 17th ed. (2000)…………………………………..23

*Equity for Women in the 1990s*…………………………………………………………………5

*Moore's Federal Practice*, 3d ed. 1998……………………………………………….…..11

National Center for Educational Statistics,
*Digest of Educational Statistics*, Table 258……………………………………..…..4 n.1

N.Y. State Department of Education, *ORIS*……………………………………….....…4

*Restatement (Second) of Judgments* § 20 (1982)…………………………….…..9, 10

*Restatement (Second) of Judgments* § 27 (1982)……………………………...10, 11, 12

*Restatement (Second) of Judgments* § 28 (1982)…………………………….……..13

I, Roy Den Hollander ("Den Hollander"), attorney and plaintiff class-representative, on behalf of myself and all others similarly situated, ask this Court to reconsider the Magistrate Judge's Report and Recommendation, and file these objections in accordance with Fed. R. Civ. P. 72(b).

1. Magistrate Judge Henry B. Pitman converted the defendants' motions to dismiss under Fed. R. Civ. P. 12(b)(1) and 12(b)(6) into motions for summary judgment. The Magistrate filed his Report and Recommendation on July 1, 2011 granting the defendants summary judgment.

2. I file these objections to Magistrate Pitman's Report and Recommendation.

3. I object to Magistrate Pitman's Report and Recommendation for the following reasons:

### General Objections to the Magistrate's Report and Recommendation

4. In observance of another Fourth of July, the federal courts, this time through Magistrate Judge Pitman, once again declared to all men that they have no rights when opposing in these United States the favored treatment of society's majority—females.

5. At the hour of high noon on the Friday before the long holiday that annually celebrates Americans' day of liberty from the abuse of governmental power, Magistrate Pitman delivered his decision that complied with the *de facto* ideology of the federal judiciary: men don't count; they have no rights when challenging the preferential treatment of the majority.

6. I have brought three men's rights cases, or as the New York Times describes them "anti-feminist" cases, in the federal courts. This present case is a continuation of the third, which claimed federal and state support for Women's Studies programs were unconstitutional because there were effectively no Men's Studies program for the minority of students—men. Not once,

not even close to once, did any federal court reach the fundamental question in each case:  Is it fair under the U.S. Constitution to give women favorable treatment at the expense of the rights of men?  The cases were not about enforcing more rights for men but defending the rights they have in the face of an onslaught by a totalitarian belief system—Feminism.

7.     Every court has used one or another of the many methods that bureaucrats endowed with governmental power use, or more accurately abuse, in order to further their personal beliefs or demonstrate sequacious allegiance to those they fear.  Every case was thrown out of court at the very first instance, regardless of what the blindfolded lady in the courthouse allegedly represents.

8.     In the "Ladies Nights' case, where public accommodation nightclubs charged males more for admission, the federal courts resorted to an abuse of power by simply decreeing that "state action" exists only at the point where an alcoholic drink is handed over to a customer but not when the customer enters the nightclub to reach the bar to obtain an alcoholic drink.  It was the classic sophism of "a distinction without a difference."

9.     The federal courts found the "distinction" necessary in order <u>not</u> to overrule a 1969 case that found state action when a bar discriminated against two females.  The courts claimed in the 1969 case that the two females were refused alcoholic drinks, so state action was involved.  However, the files of the original case do not refer to any refusal to serve alcoholic drinks.  The courts simply invented a fact to reach the decision required by the judiciary's anti-male ideology because now it was males being discriminated against—which is acceptable.

10.    In the Violence Against Women's Act case, the Department of Homeland Security's immigration divisions use proceedings kept secret from Americans to make findings of fact that an American has committed "battery," "extreme cruelty" or an "overall pattern of

violence" against an alien spouse or lover.  The secret proceedings are used against a disproportionate number of American males—around 85%, which makes it an equal protection violation in the application of the law.  *Yick Wo v. Hopkins*, 118 U.S. 356 (1886)(laws might not have invidiously discriminatory classifications written in words, but they may be applied in such a way as to create such classifications).

11.     The federal courts in the Violence Against Women's Act case again exercised an abuse of power in dismissing the case for lack of injury by resting their decisions on the following Kafkian logic:  Since the fact-findings about what an American did and to whom the Government provides those fact-findings (such as certain Feminist organizations and potential government employers) are kept secret from the American, any allegation of harm stemming from those secret fact-findings that the American makes is "speculative."  The plaintiffs, including me, could not find out what the Government did behind closed doors concerning us because we were locked out; therefore, we could not specifically say what took place or how those fact-findings were used against us.  The courts ruled our allegations speculative even though it was the Government's secrecy which we were challenging that allowed the courts to rule our allegations speculative—Catch 22.

12.     Once again, the federal courts' subservience to society's preoccupation with punishing males for any perceived or imagined slight to females, citizen or alien, caused them  to ignore the wisdom of one of  the better Supreme Court Justices:  secrecy "'provides a cloak for the malevolent, the misinformed, the meddlesome, and the corrupt to play the role of informer undetected and uncorrected.'  Appearances in the dark are apt to look different in the light of day."  *Anti-Fascist Committee v. McGarth*, 341 U.S. 123, 172 (1951)(Frankfurter J., concurring).

13.     The first round of this case mainly relied on Equal Protection and Title IX challenges to the legality of Women's Studies programs in New York State's higher education system where females make up 58% of all college students, receive over 55% of the Bachelor degrees, over 63% of the Master's degrees, and over a majority of the Doctoral degrees.  N.Y. State Department of Education, *ORIS*.[1]  The federal courts again dismissed at their first chance by ruling that any harm caused the minority—males—by the lack of a Men's Studies program was "speculative."  The federal courts do not say the same about the lack of a female sports team when a college only has a male team, but that's because males, even as a minority, are disfavored by the federal courts.

14.     As for the claim that Feminism was a religion in the first round of this case, *Den Hollander I*, the district court abused its power in favor of the federal courts *de facto* ideology by making a finding of fact during motions to dismiss, which is not supposed to happen under the Federal Rules.  District Judge Kaplan issued a decree without any evidence that "Feminism is no more a religion than physics…."  Now that may be so, although I doubt it, but in this day and age we are beyond accepting proclamations of the truth by the powerful just because they are powerful.

15.     Further, District Judge Kaplan, after dismissing the complaint for lack of standing—meaning the Court no longer had the authority to make any further decisions about the case—tried to hammer another nail in the coffin of men's rights by, according to Magistrate Pitman, "dismiss[ing] the Establishment Clause claims 'on the alternate ground that they are absurd and utterly without merit.'"  (Judge Pitman Report and Recommendation at pp. 8-9).

---

[1] By 2016, across America, females will receive 64% of the Associate degrees, over 60% of the Bachelor degrees, 53% of the Professional degrees, and 66% of the Doctoral degrees.  National Center for Educational Statistics, *Digest of Educational Statistics*, Table 258.

Judge Kaplan could not dismiss under Rule 12(b)(6) because he had already thrown the case out under Rule 12(b)(1).  Such judicial overkill is consistent with the treatment received by the currently disfavored class of men in federal courts.

16.     The Second Circuit Court of Appeals took a different tact on the religion issue by resorting to the hyper-technical pleading rules prior to the 1930s.  Because I did not say "I am a taxpayer" in the complaint, I did not have standing to bring an Establishment Clause challenge. The Second Circuit had the allegation before it that I was a resident of New York City and knew I was a lawyer admitted to practice in that court, but it still refused to take judicial notice of my being a taxpayer.  The Court, instead, reached back 80 years to use a tactic long since relegated to the dustbin of history in order to throw another men's rights case into the street.

17.     The Second Circuit Court also made a reference that the complaint did not cite to the relevant statutes, but that is simply false.  "Equity for Women in the 1990s" is a Regents' policy statement carrying the effect of law on higher educational institutions, Educ. Law § 207 (although § 207 was not cited, a summary of the text was at ¶ 28 of the Complaint), and the Bundy aid statute was specifically cited at ¶¶ 49 and 157 in the complaint in the original action.

18.     This four year long train of abuse of power by the federal courts to quell any attempt to vindicate the rights of men through judicial action brings us to Magistrate Pitman exhibiting his faithful commitment to the federal courts *de facto* anti-male ideology.  Without ever reaching and apparently never researching the substantive claims, Magistrate Pitman made the unnecessary and derogatory comment that such claims were of "dubious merits."  (Judge Pitman Report and Recommendation at 27).

19.     On June 3, 2011, Magistrate Pitman notified the parties of his intent to treat the defendants' motions to dismiss as motions for summary judgment.  All additional papers, if any,

were to be submitted by June 30th.   I'm the last to submit my papers, which are filed on ECF on June 29th with courtesy copies to the Magistron on June 27th.  My papers include a statement of material facts, a declaration, and a memorandum of law opposing summary judgment.  At a little after 12 noon on July 1, 2011, the Friday before the long July 4th weekend and a day after Magistrate Pitman's deadline for submission of papers, the Magistrate files on ECF a 39 page Report and Recommendation.  In that Report and Recommendation the Magistrate cited as part of his research visiting various State and Federal websites on June 13, 2011.  (Report and Recommendation p. 4).

20.     The reasonable inference is that the Magistrate made his decision and wrote his report long before I filed my papers, in part, to enable him to serve his lengthy report on the Friday before a long weekend in which all the local law libraries were closed until the following Tuesday, July 5th.  I've run into this type of tactic before from the Government in men's rights cases.

21.     Another indication of Magistrate Pitman's discourtesy towards those who choose to fight for the rights of men is shown by his repeatedly using "Hollander" as my last name when he was on notice that my last name is "Den Hollander."  (Den Hollander Memorandum of Law in Opposition to motions to Dismiss at p. 1 n.3)(Docket Item 11).  I expect such disrespect from some attorneys but not judges.

22.     Through all these cases, including this one so far, the federal courts have been consistent in abusing their power by using any available means and Orwellian logic to do the opposite of what they are supposed to do:  "[I]n times of repression, when interests with powerful spokes[persons] generate symbolic pogroms against nonconformists, the federal

judiciary … has special responsibilities to prevent an erosion of the individual's constitutional rights." *Younger v. Harris*, 401 U.S. 37, 58 (1971)(Mr. Justice Douglas dissenting).

23.     The federal courts have consistently failed to realize that "The heart of the matter is that democracy implies respect for the elementary rights of men, however suspect or unworthy those men may be; a democratic government must therefore practice fairness. . . ." *Joint Anti-Fascist Refugee Committee v. McGrath*, 341 U.S. 123, 170 (1951) (Mr. Justice Frankfurter concurring).

24.     So, I will drag this case all the way up the ladder as I did with the "Ladies' Nights" and "Violence Against Women's Act" cases, but the results will be the same, since there is no justice for the rights of men in the courts of these United States due to the institutionalized prejudice against men.

### Specific Objections to the Magistrate's Report and Recommendation

25.     I object to the Magistrate finding that collateral estoppel applies and his lack of a decision as to whether *res judicata* applies.

26.     Magistrate Pitman held "that [Den Hollander's] action is barred by collateral estoppel."  (Judge Pitman's Report and Recommendation at 27).  The Magistrate, however, never reached a decision on *res judicata*, he just left it hanging in the air with "In any event …." (Judge Pitman's Report and Recommendation at 23).

27.     I also object to the Magistrate not reaching the other issues in this case for which my arguments can be found at Den Hollander Memorandum of Law in Opposition to the Motions to Dismiss at 7-25.

*Magistrate Pitman's Factual Inaccuracies*

28.     Magistrate Pitman claimed in *Den Hollander I* that "On April 15, 2009, the Honorable Kevin Nathaniel Fox, United States Magistrate Judge, issued a Report and Recommendation that recommended a dismissal of <u>all</u> claims for lack of standing (Docket Item 33 in *Hollander v. Inst. for Research on Women & Gender at Columbia University*, 08 Civ. 7286)." (Judge Pitman Report and Recommendation at 8 (emphasis added))  That is false.  In *Den Hollander I* the Magistrate never addressed the Establishment Clause claims.

29.     Another of Magistrate Pitman's statements is misleading when he claimed that in oral argument in *Den Hollander I* before the Second Circuit that "Hollander also conceded that, in filing his objections to Judge Fox's Report and Recommendation, he did not ask for leave to amend the complaint with respect to [taxpayer] standing in the event the court ruled against him (Transcription of Oral Argument at 9-10)." (Judge Pitman Report and Recommendation at 9-10).

30.     The import of what I told the Second Circuit was that since Magistrate Fox in *Den Hollander I* never reached the Establishment Clause standing issue, never even mentioned it, how was I to read his mind to find that he had a problem with taxpayer standing and I should therefore quickly amend the complaint.  That makes no sense unless assuming it was a trap, or that any type of illogic is justified in getting rid of a men's rights case.  I told the Second Circuit:

> "The magistrate report did not touch upon the Establishment Clause.  In my objections, I specifically objected that the magistrate's report did not address the Establishment Clause claims.  The first time the establishment clause claims were addressed by the lower court were addressed by the district judge in his decision."

> ". . . . had the magistrate put in that he was dismissing [the complaint] because I did not allege that I was a taxpayer, that I did not specifically put those words in there, then of course I'd request an amendment.  Obviously and once again, you can't read what a judge's mind says."

(Den Hollander Decl. Opp. to Motions to Dismiss at Ex. E, at 10).

**Magistrate Pitman's lack of a decision over res judicata.**

31.     The Magistrate cites to cases that hold a dismissal for lack of standing is not an adjudication on the merits and, therefore, *res judicata* does not apply, but he also cites to other cases in which he claims the opposite.  (Judge Pitman's Report and Recommendation at 18-23). So, which is it?  He never says.  I argue that dismissal for lack of standing is not on the merits; therefore, *res judicata* does not apply.

32.     *Res judicata*, or claim preclusion, requires a final judgment that was rendered on the merits.  *Hughes v. U.S.*, 71 U.S. 232, 237 (1866).  The Second Circuit continues to follow this rule.  *EDP Med. Computer Sys. v. U.S.*, 480 F.3d 621, 624 (2d Cir. 2007)(quoting *In re Teltronics Servs., Inc.*, 762 F.2d 185, 190 (2d Cir. 1985)(the doctrine bars "later litigation if [an] earlier decision was … a final judgment on the merits….")).

33.     Dismissal for lack of subject matter jurisdiction is not a judgment on the merits; therefore, it has no *res judicata*, or claim preclusive, effect.  *Thomas v. County of Franklin*, 15 F.3d 245, 253 (2d Cir. 1994).  "If … [a] suit was dismissed for … want of jurisdiction, or was disposed of on any ground which did not go to the merits of the action, the judgment rendered will prove no bar to another suit."  *Hughes*, 71 U.S. at 237.  Since standing is one of the most important of the jurisdictional doctrines, *U.S. v. Hays*, 515 U.S. 737, 742 (1995),  a dismissal for lack of standing is not a judgment on the merits, *see Evac, LLC v. Pataki*, 89 F. Supp. 2d 250, 261 n.4 (N.D.N.Y. 2000).

34.     The *Restatement (Second) of Judgments* does not use the terminology "on the merits" but states at § 20:

> A personal judgment for the defendant, although valid and final, does not bar another action by the plaintiff on the same claim:

(a) When the judgment is one of dismissal for lack of jurisdiction ….

In addition, Fed. R. Civ. P. 41(b) supports the proposition that a dismissal for lack of subject matter jurisdiction will not bar a subsequent action because such a ground "is so plainly based on a threshold determination that a specification that the dismissal will be a bar should ordinarily be of no effect." *Restatement (Second) of Judgments* § 20, Comment *d*.

35.     Once the District Court dismissed *Den Hollander I* for lack of standing under Equal Protection and Title IX, it no longer had subject matter jurisdiction; that is, the authority to rule that the Establishment Clause claim was also dismissed on the merits under Rule 12(b)(6). "Jurisdiction, whether it be subject-matter or personal, concerns the authority of the court to hear and determine the controversy." *Local 538 United Bhd. of Carpenters & Joiners v. U.S. Fid. & Guar. Co.*, 154 F.3d 52, 55 (2d Cir. 1998).  Without it, a court lacks the power to adjudicate an action.  *U.S. ex rel. Rudick v. Laird*, 412 F.2d 16, 20 (2d Cir. 1969).  So when District Court Judge Kaplan wrote "[t]he Establishment Clause claims are dismissed also on the alternative ground that they are absurd and utterly without merit," Den Hollander Decl. Opp. to Motions to Dismiss at Ex. C at 2, the Court had no jurisdiction to make that decision.  This action, therefore, is not barred by *res judicata*, or claim preclusion.

***Magistrate Pitman erred in holding that collateral estoppel, or issue preclusion, applies to the Establishment Clause issue of taxpayer standing.***

36.     For collateral estoppel, also called issue preclusion, to apply, the <u>identical</u> issue must have been (1) actually litigated—that is, contested by the parties and submitted for determination by the court, (2) actually determined by a court of competent jurisdiction in the first trial, and (3) the court's decision was necessary to support the judgment in the first action. *Restatement (Second) of Judgments* § 27 (emphasis added).

37.     As a general rule, when underline pleadings put a question of fact in issue and that fact

question is submitted to the trier of fact for determination, then the issue of collateral estoppel

applies.  *Restatement (Second) of Judgments* § 27 comment d & e (1982)(emphasis added).

38.     "A corollary of the actual litigation and decision requirements is that 'when a

court cannot ascertain what was litigated and decided, issue preclusion cannot operate.'"

*Securities Exch. Comm'n v. Monarch Funding Corp.*, 192 F.3d 295, 309 (2d Cir. 1999)(quoting

18 James W. Moore et al, *Moore's Federal Practice*, § 132.03[2][g] (3d ed. 1998) (citing

*Mitchell v. Humana Hosp.-Shoals*, 942 F.2d 1581, 1583-84 (11th Cir. 1991); see also id. §

132.03[3][d])).

39.     The fact issue of whether I was a taxpayer was never included in any pleadings in

*Den Hollander I*, never included in the motion to dismiss opposition papers in the district court,

never addressed in Magistrate Fox's Report and Recommendation and never addressed in

District Judge Kaplan's Order.   "Collateral estoppel, or issue preclusion, prevents the relitigation

of an issue that was raised, litigated, and actually decided by a judgment in a prior proceeding,

regardless of whether the two suits are based on the same cause of action." *Balderman v. United

States Veterans Admin.*, 870 F.2d 57, 62 (2d Cir. 1989)(citing *Lawlor v. National Screen Service*,

349 U.S. 322, 326 (1955)); *Restatement (Second) of Judgments* § 27 (1982).  So in the District

Court, the issue of my taxpayer standing was not litigated and not decided; therefore, collateral

estoppel does not apply with respect to the District Court proceedings.

40.     Judge Kaplan did make gratuitous statements concerning the Establishment

Clause claim, but since he had already dismissed the case for lack of Equal Protection and Title

IX standing in accordance with Magistrate Fox's Report and Recommendation, those statements

carry no legal authority and cannot be used to infer that taxpayer standing was litigated and

decided.  This is especially true since Judge Kaplan's gratuitous statements did not even refer to

taxpayer standing, but the issue on the merits of whether Feminism is a religion:

> Finally, although the Magistrate Judge did not reach the merits, it bears noting
> that plaintiff's central claim is that feminism is a religion and that alleged federal
> and state approval or aid to Columbia's Institute for Research on Women &
> Gender therefore constitute a violation of the Establishment Clause of the First
> Amendment.  Feminism is no more a religion than physics, and at least the core of
> the complaint therefore is frivolous…. The Establishment Clause claims are
> dismissed also on the alternative ground that they are absurd and utterly without
> merit.

 (Den Hollander Decl. Opp. to Motions to Dismiss at Ex. C at 2).

  41. The Second Circuit Court of Appeals, however, did discuss the taxpayer standing

issue in oral argument based on the papers submitted in that Court and concluded that "Nor has

plaintiff made out the requirements for <u>taxpayer</u> standing for his Establishment Clause claim."

(Den Hollander Decl. Opp. to Motions to Dismiss at Ex. D at 3-4 (emphasis added)).  But that

decision could not have been necessary, or essential, to affirm the District Court and Magistrate's

decisions because those decisions only dealt with Equal Protection and Title IX standing—they

did not deal with taxpayer standing.  Since the Second Circuit's decision on taxpayer standing

was not necessary, or essential, to affirm the lower court's decisions, collateral estoppel does not

apply to that issue with respect to the Appeal's Court proceedings.  *Bobby v. Bies*, 129 S. Ct.

2145, 2152 (2009)("If a judgment does not depend on a given determination, relitigation of that

determination is not precluded.")(citing *Restatement (Second) of Judgments* § 27, Comment h

(1982)("Such determinations have the characteristics of dicta….")).

  42. Further, "It is hornbook law that theories not raised squarely in the district court

cannot be surfaced for the first time on appeal."  *McCoy v. Mass. Inst. of Tech.*, 950 F.2d 13, 22

(1st Cir. 1991), *cert. denied*, 504 U.S. 910 (1992).  Since the issue of taxpayer standing was not

raised in the lower court, it could not properly have been raised on appeal.  Relitigation of an

issue is <u>not</u> precluded if the party against whom collateral estoppel is sought could not have appealed that issue.  *McCoy v. Mass. Inst. of Tech.*, 950 F.2d 13, 22 (1st Cir. 1991), *cert. denied*, 504 U.S. 910 (1992)("In New York, the danger inherent in the doctrine of collateral estoppel— that an erroneous first decision on an issue will be perpetuated in subsequent litigation—is remedied to an extent by the requirement that the doctrine not be applied when there is no opportunity for appellate review."); *County of Suffolk v. Amerada Hess Corp.*, 2007 U.S. Dist. LEXIS 45543 n.22 (S.D.N.Y. 2007).

43.     Collateral estoppel does not apply when "the party against whom preclusion is sought could not, as a matter of law, have obtained review of the judgments in the initial action." *Restatement (Second) of Judgments* § 28(1)(1982).  Such as when a party is "disabled as a matter of law from obtaining review by appeal …."  *Id.* at comment a.  "[I]nability to obtain appellate review … <u>does</u> prevent preclusion …."  *Gelb v. Royal Globe Insurance Co.*, 798 F.2d 38, 44 (2d Cir. 1986)(emphasis added).   Despite what occurred in the Second Circuit, under the law I could not have appealed the taxpayer standing issue; therefore, I am not prevented from raising it in this action.

44.     So while collateral estoppel would apply to standing under Equal Protection and Title IX because those issues were properly litigated and decided in the District Court and properly before the Second Circuit in *Den Hollander I*, *Mrazek v. Suffolk County Board of Elections*, 630 F.2d 890, 896 n.10 (2d Cir. 1980), collateral estoppel does not apply to the taxpayer standing issue because it was never pleaded, litigated, or decided in the District Court nor was it legally before the Second Circuit Court of Appeals.

***Even if collateral estoppel applies to the taxpayer standing issue, it does not apply to the non-economic standing issue unless the false facts presented by Magistrate Pitman on this issue are ordained as true.***

45.     The Magistrate said that in this action "Hollander's Establishment Clause claims are identical to those raised in the Underlying Action, with one distinction:  in his complaint here, Hollander has expressly alleged his standing as a taxpayer as an alternative basis for standing."  (Judge Pitman's Report and Recommendation at 28).  Actually there are two distinctions.  In the complaint in this action, I also alleged standing under the Establishment Clause for non-economic harm.  (Compl. ¶¶ 79-91).

46.     Magistrate Pitman found that as to taxpayer standing in *Den Hollander I* "At oral argument, the Second Circuit discussed this issue [taxpayer standing] at length with Hollander and defendants….  The foregoing demonstrates that the issue of taxpayer standing was raised previously and was actually litigated and decided.  Hollander had a full and fair opportunity to litigate the taxpayer standing issue, and the resolution of this issue was necessary to a valid and final judgment on the issue of standing."  (Judge Pitman's Report and Recommendation at 28-29).

47.     However, when it comes to the issue of non-economic standing,[2] no such events occurred in *Den Hollander I.*  Therefore, by Magistrate Pitman's own analysis, collateral estoppel does <u>not</u> apply to the non-economic standing issue because non-economic standing was <u>not</u> "litigated and decided in the previous proceeding."  (Judge Pitman's Report and Recommendation at 28, citing *Ball v. A.O. Smith Corp.,* 451 F.3d 66, 69 (2d Cir. 2006)(quoting *Purdy v. Zeldes*, 337 F.3d 253, 258 & n.5 (2d Cir. 2003)).

---

[2] The only reference to non-economic standing made in the Court of Appeals was in plaintiff's Brief and Reply, but since they had not been raised in the lower court, they were not properly before the Appeal's Court.

48.     Magistrate Pitman tries to avoid this conclusion by simply misrepresenting the facts.  He claims that "Hollander also alleges non-economic standing—which he previously alleged in the Underlying Action Complaint."  (Judge Pitman Report and Recommendation at 36).  That is false.  None of the complaint allegations in the previous action *Den Hollander I* alleged Establishment Clause non-economic standing. (*See Den Hollander I* First Amended Complaint, 08 Civ 7286, Docket Item 17).

49.     Magistrate Pitman further claims, "This ground for standing was previously litigated and decided in the Underlying Action by Judge Kaplan, who adopted Judge Fox's Report and Recommendation and dismissed for lack of standing."  (Judge Pitman Report and Recommendation at 36).  That is also false.

50.     As I stated previously, *supra* at ¶ 28, Magistrate Fox in *Den Hollander I* completely ignored the Establishment Clause claims.  (*See* Magistrate Fox Report and Recommendation, 08 Civ 7286, Docket Item 33).  So when Judge Kaplan adopted Magistrate Fox's report and the Second Circuit affirmed dismissal "for substantially the reasons stated" in Magistrate Fox's Report and Recommendation, neither court could  have adopted a decision concerning the Establishment Clause non-economic standing issue because Magistrate Fox had made none.  (Den Hollander Decl. Opp. to Motions to Dismiss at Exs. C at 1, D at 4).  Magistrate Fox only addressed standing under Equal Protection and Title IX.

51.     Additional evidence that the Second Circuit never reached a decision on the Establishment Clause non-economic standing issue is that the only statement made about the Establishment Clause in its Summary Order was "Nor has plaintiff made out the requirements for taxpayer standing for his Establishment Clause claim."  (Den Hollander Decl. Opp. to Motions to Dismiss, Ex. D at 3-4 (emphasis added)).

15

52.    Furthermore, Judge Kaplan's gratuitous statements concerning the Establishment Clause cannot be used to infer dismissal on non-economic standing grounds because those statements are legally meaningless as argued *supra* ¶ 35.

53.    Not the Magistrate, not the District Judge, and not the Second Circuit Judges ever considered or decided the non-economic issue of standing in *Den Hollander I*.

54.    So, in the words quoted by Magistrate Pitman, the "duel" over the issue of non-economic standing was never "fought out."  (Judge Pitman Report and Recommendation at 20, quoting *Comm'r of Internal Revenue v. Sunnen*, 333 U.S. 591, 598 (1948)).

***Magistrate Pitman inappropriately relies on cases outside the Second Circuit to override the authority of Second Circuit and U.S. Supreme Court precedence on the issue of collateral estoppel, also known as issue preclusion.***

55.    Unable to find Second Circuit or Supreme Court cases that support throwing out another men's rights case because such cases come down on the side of precluding collateral estoppel in the specific fact situation here, Magistrate Pitman cobbles together a lengthy string cite of cases from other circuits—most not on point, and inapplicable cases from this circuit in an attempt to overwhelm with numbers what he cannot achieve with pertinent authority.

56.    Magistrate Pitman held, "I conclude—based on the weight of authority discussed above—that [Den Hollander's] action is barred on the grounds of collateral estoppel."  (Judge Pitman Report and Recommendation at 27).  But how many of those cases he cites actually deal with collateral estoppel as opposed to *res judicata* and address the specific fact situation here that the first suit did not allege jurisdictional facts that are alleged here.

57.    Magistrate Pitman's inappropriate other circuit cases follow:

a. *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1218-19 (10th Cir. 2006), dealt with whether dismissal for lack of standing must be with or without prejudice, did not involve the absence of a jurisdictional fact in a prior pleading;

b. *Ammex, Inc. v. United States*, 384 F.3d 1368, 1371-72 (Fed. Cir. 2004), collateral estoppel will bar the relitigation of any matters in a second proceeding concerning a second taxable year that were actually presented and determined in the first suit, did not involve the absence of a jurisdictional fact in a prior pleading;

c. *Harley v. Minnesota Mining and Manufacturing Co.*, 284 F.3d 901, 909 (8th Cir. 2002), did not involve the absence of a jurisdictional fact in a prior pleading;

d. *Hooker v. F.E.C.*, 21 Fed. App'x. 402, 405-06 (6th Cir. 2001), dealt with standing allegations identical to prior pleadings, did not involve the absence of a jurisdictional fact in a prior pleading;

e. *Dresser v. Backus*, 229 F.3d 1142, 2000 WL 1086852 at *1 (4th Cir. Aug. 4, 2000), current standing allegation identical to prior one that was fully litigated and decided, did not involve the absence of a jurisdictional fact in a prior pleading;

f. *Cutler v. Hayes*, 818 F.2d 879, 887-889 (D.C. Cir. 1987), estoppel used to prevent defendants from challenging prior finding that plaintiffs actually had standing, did not involve the absence of a jurisdictional fact in a prior pleading;

g. *People of Bikini v. United States*, 77 Fed. Cl. 744, 776-77 (Fed. Cl. 2007), plaintiffs estopped from relitigating dismissal for lack of subject matter jurisdiction caused by U.S. withdrawing consent to be sued, did not involve the absence of a jurisdictional fact in a prior pleading;

h. *Bui v. IBP, Inc.*, 205 F. Supp. 2d 1181, 1189 (D. Kansas 2002), district court invoked collateral estoppel because prior case with same issues was currently on appeal to the Tenth Circuit, did not involve the absence of a jurisdictional fact in a prior pleading;

i. *Dozier v. Ford Motor Co.*, 702 F.2d 1189, 1190 (D.C. Cir. 1983)(Scalia, Cir. J.), "On this appeal we must decide the *res judicata* effect of a prior dismissal for lack of subject matter jurisdiction," since decided on *res judicata* grounds, inferences to collateral estoppel are dicta, did not involve the absence of a jurisdictional fact in a prior pleading;

j. *Citizen Elecs. Co. v. Osram GmbH*, 225 Fed. App'x. 890, 893 (Fed. Cir. 2007), decided in accordance to parties stipulation that D.C. Circuit law apply;

k. *Park Lake Res. Ltd. Liab. Co. v. USDA*, 378 F.3d 1132, 1137-38 (10th Cir. 2004), issue had not yet ripened since prior decision, did not involve the absence of a jurisdictional fact in a prior pleading; and

l. *Magnus Electronics, Inc. v. La Republica Argentina*, 830 F.2d 1396, 1397, 1402 (7th Cir. 1987), "We conclude that *res judicata* bars Magnus from maintaining this suit," case was not a decision based on collateral estoppel.

58.   None of the Second Circuit cases not the couple of U.S. Supreme Court cases cited by Magistrate Pitman actually deal with the specific fact situation here:

a. *Marvel Characters v. Simon*, 310 F.3d 280 (2d Cir. 2002), did not involve the absence of a jurisdictional fact in a prior pleading;

m. *Boguslavsky v. Kaplan*, 159 F.3d 715 (2d Cir. 1998), did not involve the absence of a jurisdictional fact in a prior pleading;

n.  *Comm'r of Internal Revenue v. Sunnen*, 333 U.S. 591 (1948), did not involve the absence of a jurisdictional fact in a prior pleading;

o.  *Ball v. A.O. Smith Corp.*, 451 F.3d 66 (2d Cir. 2006), did not involve the absence of a jurisdictional fact in a prior pleading;

p.  *Purdy v. Zeldes*, 337 F.3d 253 (2d Cir. 2003), did not involve the absence of a jurisdictional fact in a prior pleading;

q.  *Uzdavines v. Weeks Marine, Inc.*, 418 F.3d 138 (2d Cir. 2005), did not involve the absence of a jurisdictional fact in a prior pleading;

r.  *Parklane Hosiery Co. v. Shore*, 439 U.S. 322 (1979), did not involve the absence of a jurisdictional fact in a prior pleading;

s.  *Bear, Stearns & Co. v. 1109580 Ont., Inc.*, 409 F.3d 87 (2d Cir. 2005), did not involve the absence of a jurisdictional fact in a prior pleading;

t.  *Mrazek v.Suffolk Cnty. Bd. of Elections*, 630 F.2d 890 (2d Cir. 1980), did not involve the absence of a jurisdictional fact in a prior pleading;

59.  Now that the chaff of the Magistrate's cases on collateral estoppel is out of the way, and the blind that he set up with so many off-point cases is disclosed, the only cases that might support Magistrate Pitman's position are *In re V & M Mgmt.*, Inc., 321 F.3d 6 (1st Cir. 2003); *Perry v. Sheahan*, 222 F.3d 309 (7th Cir. 2000), and *DaCosta v. United States*, No. 09-558 T, 2010 WL 537572 (Fed. Cl. Feb. 16, 2010)—three circuits but no U.S. Supreme Court.

60.  The cases relied upon in my Memorandum of Law in Opposition to the Motions to Dismiss at 5-7 (10 CV 9277, Docket Item 11) do address the specific fact situation here of adding jurisdictional facts that existed at the time of the complaint in *Den Hollander I.* Those cases are *Smith v. McNeal*, 109 U.S. 426, 431 (1883); *Ripperger v. A. C. Allyn & Co.*, 113 F.2d

332, 333-334 (2d Cir. 1940), *cert. denied*, 311 U.S. 695; *York v. Guaranty Trust Co.*, 143 F.2d

503 (1944), *overruled on other grounds*, 326 U.S. 99 (this Supreme Court case was later

abandoned in *Hanna v. Plumer*, 380 U.S. 460 (1965); and *Lowe v. U.S.*, 79 Fed. Cl. 218, 229,

230 (Fed. Ct. Cl. 2007)).

61.     Magistrate Pitman tries to discredit the first three of the cases that I cited and

completely ignores the fourth.

62.     For *Smith v. McNeal*, 109 U.S. 426 (1883), the Magistrate actually relies on a case

decided in the D.C. Circuit, *Dozier v. Ford Motor Co.*, 702 F.2d 1189, 1192 (D.C. Cir. 1983),

which concerned *res judicata* and not collateral estoppel, to overrule the U.S. Supreme Court

case *Smith*.  *Smith* at 431 held that on adding a jurisdictional fact that existed at the first suit:

> "The first suit was therefore dismissed, because the declaration did not state the
> jurisdictional facts upon which the right of the court to entertain the suit was
> brought.  In other words, the case was dismissed for a defect in pleading.  In the
> present suit the defect of the declaration in the first suit is supplied."

63.     Magistrate Pitman claimed that as far as he was concerned the *Dozier* case

superseded the Supreme Court's *Smith v. McNeal* because it expressed a rule from a system prior

to the enactment in 1938 of the Federal Rules of Civil Procedure, and in that pre-Federal Rules

system, liberal amendment of pleadings was not permitted.  (Judge Pitman Report and

Recommendations at 31, citing *Dozier*, 702 F.2d at 1192-93).  That reasoning makes no sense

because since 1938, the beginning of the current era of liberal pleadings, two Second Circuit

cases have relied on *Smith v. McNeal* in upholding the proposition that a failure to allege an

existing jurisdictional fact is no bar where the defect was cured in a subsequent pleading.  *York*,

143 F.2d at 518-19 and n.21; *Ripperger*, 113 F.2d at 333-334.

64.     In addition, despite Magistrate Pitman's conclusion that *Smith v. McNeal* is superseded, it continues to be cited as good law in this era of liberal pleading by the courts of the Second, Fourth, Sixth, and Seventh Circuits and by the Federal Court of Claims.

65.     Magistrate Pitman next takes aim at the Second Circuit case *Ripperger v. A. C. Allyn & Co.* by giving it a meaning contrary to its words.  In *Ripperger*, the Second Circuit relied on *Smith* and described that decision as when "the first suit was dismissed because the complaint did not allege the requisite jurisdictional facts … the dismissal was held to be no bar to a second suit in the same court in which the complaint did state them."  *Id*. at 333.  The Court in *Ripperger* did not allow a second suit because "both complaints [were] alike except for [a] non-jurisdictional allegation in the second complaint…."  *Id.* at 333-334.  Magistrate Pitman, however, wrongly claims *Ripperger* means "that jurisdictional defects can only be cured with new facts that post-date the prior action's dismissal."  (Judge Pitman Report and Recommendations at 33).

66.      If *Ripperger*'s "holding actually supports defendants' position," as Judge Pitman says, Report and Recommendation at 33, then why did he go to the trouble of first arguing that cases from other circuits support his decision for the defendants.   (Judge Pitman Report and Recommendations at 23-27, 29-30).  He could have simply cited to *Ripperger v. A. C. Allyn & Co.*—end of story.  He didn't because his re-writing of the holding does not stand up to scrutiny, so he relegated it to the last substantive section of his lengthy Report and Recommendation.

67.     Some of the authorities that disagree with Magistrate Pitman's re-writing of *Ripperger* follow:  *Kendall v. Overseas Dev. Corp.*, 700 F.2d 536, 539 (9th Cir. 1983)("an alteration of the <u>non-jurisdictional</u> allegations does nothing to cure the original lack of in

personam jurisdiction")(emphasis added); *Josephson's Nat'l Bar Review Centers, Inc. v. Nexus Corp.*, 359 F. Supp. 1144, 1146 (N.D. Ill. 1973); *Panaview Door & Window Co. v. Van Ness*, 135 F. Supp. 253, 260 (D. Cal. 1955)(dismissal of prior action will not "bar a second suit where the pleader in the prior suit failed to allege some essential jurisdictional fact which later is supplied in a new pleading.").

68.     Magistrate Pitman cites to *Ripperger v. A. C. Allyn & Co.* four times but not once notes the denial of a petition for certiorari.  (Judge Pitman Report and Recommendation at 22, 32, 34).  Why is that?  Perhaps it indicates the importance the Supreme Court places on the continuing validity of *Smith v. McNeal*.

69.     Not to be out done with overruling one U.S. Supreme Court case, *Smith v. McNeal*, and manufacturing a new holding for *Ripperger v. A. C. Allyn & Co.*, Magistrate Pitman then unilaterally declares the following statement in *York v. Guaranty Trust Co.* to be dicta:

> This too should be noted: As appears from *Ripperger v. A.C. Allyn & Co.* and *Smith v. McNeal*, a prior decision dismissing a suit on the mere pleadings for lack of jurisdiction is not a bar to a second suit alleging sufficient jurisdictional facts which existed when the first suit was pending but which were not therein alleged. *Cf. Wiggins Ferry Co. v. Ohio & M.R. Co.*, 142 U.S. 396, 410 (1892); *Sylvan Beach v. Koch*, 140 F.2d 852, 860 (8th Cir. 1944); *Dennison Mfg. Co. v. Scharf Tag, Label & Box Co.*, 121 F. 313, 318 (6th Cir. 1903).

*York*, 143 F.2d at 519 n.21.

70.     Footnote 21 in *York* is used to support the Second Circuit's decision that the jurisdictional holding in a prior case against the plaintiff Mrs. York for not reaching the diversity amount of over $3,000 would not be used to give effect to defendant Guaranty Trust's collateral attack on her diversity claim in *York v. Guaranty Trust Co.  York*, 143 F.2d at 518-19.

71.     In addition, Lexis lists that footnote as one of its Headnotes—HN 7, and the following cases do <u>not</u> treat the Second Circuit's decision on the diversity jurisdictional issue in

*York* as dicta:  *Steele v. Guaranty Trust Co.*, 164 F.2d 387, 388-89 (2d Cir, 1947)(dismissed for

lack of jurisdiction as to the plaintiffs other than Mrs. York, the plaintiff in *York v. Guaranty*

*Trust Co.*); and *In re Soya Products Co.*, 112 F. Supp. 94, 97 (S.D.N.Y. 1993).

72.     Magistrate Pitman also ruled that "as already discussed, the cases relied upon in

the *York* footnote are of questionable help to Hollander."   (Judge Pitman Report and

Recommendations at 34).  Those cases are *Wiggins Ferry Co. v. Ohio & M.R. Co.*, 142 U.S. 396,

410 (1892); *Sylvan Beach v. Koch*, 140 F.2d 852, 860 (8th Cir. 1944); and *Dennison Mfg. Co. v.*

*Scharf Tag, Label & Box Co.*, 121 F. 313, 318 (6th Cir. 1903).  Magistrate Pitman, however,

<u>never</u> discussed those cases in his Report and Recommendation.  So how could he know that

they are of "questionable help to Hollander"?  He couldn't, unless there is a secret addendum.

73.     The Second Circuit believed that those cases were of some support for the

proposition that collateral estoppel was "not a bar to a second suit alleging sufficient

jurisdictional facts which existed when the first suit was pending but which were not therein

alleged," since the Second Circuit used a "*Cf.*" signal.  "*Cf.*" means that "[c]ited authority

supports a proposition different from the main proposition but sufficiently analogous to lend

support."  *The Bluebook, A Uniform System of Citation*, p. 23, 17th ed. (2000).

74.     Magistrate Pitman also ignored a Court of Federal Claims case cited by me:  *Lowe*

*v. U.S.*, 79 Fed. Cl. 218, 229, 230 (Fed. Ct. Cl. 2007):

> [E]ven when actually litigated and decided, the jurisdictional determinations
> underlying a dismissal do not have preclusive effect if after the initial dismissal,
> plaintiff has 'cured' the jurisdictional deficiency identified in the first suit…. [A]
> prior dismissal *does* preclude the same action based on the same facts unless the
> jurisdictional flaw that necessitated dismissal of the first suit has been cured….  If
> the alleged 'cure' is sufficient to repair the prior jurisdictional defect, collateral
> estoppel does not apply to the prior jurisdictional determination because the issue
> of the court's subject matter jurisdiction over the case as situated post-'cure' has
> not yet been litigated.

In *Lowe* the curable defect exception did not apply because the additional fact was irrelevant to the issue of whether the court had subject matter jurisdiction, and therefore could not cure the jurisdictional deficiency found in the prior action.

75.     As for cases <u>not</u> previously cited by me, Magistrate Pitman admits in a footnote that the rule in the Fifth Circuit is that a defect in jurisdiction may be cured by stating facts which existed prior to dismissal of the first action.  (Judge Pitman Report and Recommendation at 35 n.6, citing *Mann v. Merrill Lynch, Pierce, Fenner & Smith*, 488 F.2d 75, 76 (5th Cir. 1973)).  Magistrate Pitman, however, ignored an Eighth Circuit case that relied on and followed *Mann* because as the Eighth Circuit held, "[t]he issue here is indistinguishable" from the *Mann* decision.  *Johnson v. Boyd-Richardson Co.*, 650 F.2d 147, 149 (8th Cir. 1981)(plaintiff's first action used the wrong name for the defendant).  Magistrate Pitman also ignored a Tenth Circuit decision in an action that was "[a] case factually close" to the *Mann* case.  *Trujillo v. Colorado*, 649 F.2d 823, 825 (10th Cir. 1981)(plaintiff's first action was dismissed for failure to join proper parties that existed at the time of filing of the first action).[3]

76.     Magistrate Pitman's efforts to serve the prevalent anti-male ideological bias of the federal courts have resulted in him:

    a.   overruling a U.S. Supreme Court decision—*Smith v. McNeal*,

    b.   decreeing a second U.S. Supreme Court case of "questionable help to Hollander"—*Wiggins Ferry Co. v. Ohio & M.R. Co.*,

    c.   re-writing the holding of a Second Circuit opinion—*Ripperger  v. A. C. Allyn & Co.*,

---

[3] The cases cited in this paragraph use the term "*res judicata*" to mean collateral estoppel.

    d.   declaring that another Second Circuit case's reliance on the law for deciding an issue in a complex case was mere dicta—*York v. Guaranty Trust Co.*,

    e.   ignoring *Lowe v. U.S.* in the Federal Court of Claims,

    f.   using mere numbers to out weigh relevance,

    g.   scouring the other circuits for cases while ignoring those cases in different circuits that the Second Circuit considered pertinent to the fact situation here:  *Sylvan Beach v. Koch*, 140 F.2d 852, 860 (8th Cir. 1944); *Dennison Mfg. Co. v. Scharf Tag, Label & Box Co.*, 121 F. 313, 318 (6th Cir. 1903).  Those two cases conflict with the interpretations the Magistrate has given to two other cases he relies on from the Sixth and Eighth Circuits—*Harley v. Minn. Mining & Mfg. Co.*, 284 F.3d 901, 909 (8th Cir. 2002); *Hooker v. Federal Election Comm'n*, 21 F. App'x 402, 405-06 (6th Cir. 2001) (per curiam), and

    h.   ignoring cases in other circuits that support the preclusion of collateral estoppel in the fact situation here.

    77.   In the end, it is Magistrate Pitman with <u>three</u> relevant cases from two different circuits and the Court of Claims to my <u>ten</u> (10):  two of them U.S. Supreme Court, two Second Circuit, two Eighth Circuit, one Fifth Circuit, one Sixth Circuit, one Tenth Circuit and one Court of Claims.  Looks like the weight of authority is in my favor.

    78.   If a party timely objects to a Magistrate Judge's recommendation, the district court must make a *de novo* determination of the objectionable portions of the recommendation or findings.  The district court may then accept, reject, or modify, in whole or in part, the recommendation or finding.  Fed. R. Civ. P. 72(b).

Dated:  July 11, 2011
New York, N.Y.

/S/

_____
Roy Den Hollander, Esq. (1957)
Plaintiff class attorney and representative
545 East 14 Street, 10D
New York, N.Y. 10009
(917) 687-0652